OPINION *Page 2 
{¶ 1} Defendant-Appellant, Loren Euton, appeals the judgment of the Auglaize County Court of Common pleas convicting him of one count of gross sexual imposition and classifying him as a sexual predator. On appeal, Euton asserts that the trial court violated his constitutional rights by setting bail at fifty-thousand dollars; that the trial court erred by finding that the act of lifting a blanket could constitute force under R.C. 2901.01; that he was denied effective assistance of counsel; and, that he was not afforded the right to a speedy trial. Finding that the trial court erred in finding that the act of lifting a blanket constituted the requisite force to obtain a conviction for gross sexual imposition, we reverse and remand to the trial court for further proceedings consistent with this opinion.
 {¶ 2} On March 15, 2006, Euton was arrested and charged with gross sexual imposition. The next day, the Auglaize County Grand Jury indicted Euton for one count of gross sexual imposition in violation of R.C.2907.05(A)(1), a felony of the fourth degree. The indictment arose from an incident on March 15, 2006, whereby Euton allegedly fondled a fourteen-year old boy's genitals over his clothing. The trial court set bond at "FIFTY THOUSAND DOLLARS ($50,000.00) TEN PERCENT (10%) BOND POSTED IN THE NAME OF THE DEFENDANT, PLUS AN OWN RECOGNIZANCE BOND," with certain *Page 3 
conditions. (Journal Entry on Bond, p. 1). Subsequently, Euton entered a plea of not guilty to the count in the indictment.
 {¶ 3} On April 6, 2006, Euton moved for modification of his bond, requesting that his bond be modified to an own recognizance bond or, alternatively, that the bond amount be reduced to $5,000/10%. The trial court denied Euton's motion.
 {¶ 4} On May 30, 2006, a two-day jury trial commenced, whereat the following testimony was presented.
 {¶ 5} The victim, J.D., testified that, at the time of the incident, he lived in a residence with his father, his brother and sister, and his father's girlfriend, Annie, her three daughters, and her nephew, Michael; that, on March 15, 2006, his father, Annie, and Euton went to a local bar; that he and his brother, Kirk, stayed up playing videogames in the living room; that Euton returned from the bar alone and stumbled into the house; that he and his brother stopped playing videogames, went to their bedroom, closed the sliding pocket door, and laid down; and, that, after he and his brother went to bed, he heard someone open the sliding door and then Euton stumbled into the room and laid down beside him.
 {¶ 6} J.D. then described the events as follows:
 State: Okay. So you heard [the door sliding open] first?
 J.D.: Yeah. Then [Euton] come stumbling in there and laid beside me and then he started rubbing me on the private parts and stuff.
 State: Did you have blankets on? *Page 4 
 J.D.: Yes, Ma'am. He went under the blankets.
 State: Okay. Did you have pants on?
 J.D.: Yes, Ma'am. I had sweats on.
 State: And was he on top or underneath your sweats?
 J.D.: On top.
 State: And when you say private parts, are you talking about your penis?
 J.D.: Yes Ma'am.
 State: Okay. And what did you do as a result?
 J.D.: I jumped up. I grabbed the phone and I ran upstairs to my ex-girl-friend's room * * *. We used to go out before her mom and my dad got hooked up. Well Annie and my dad got hooked up. I sat there and I woke her up and I didn't know what to do.
 State: Okay. Did you say anything to [Euton] when he was touching you at first?
 J.D.: I told him, — I didn't say nothing and I go, — I got up and when I got up I hit him in the face with my elbow, then I ran upstairs. That's all I said, I said I had to use the restroom.
 * * *
 State: And how did you feel at the time?
 J.D.: Scared.
 State: What were you afraid of?
 J.D.: That he was gonna keep following me and doing it.
 State: Doing what?
 J.D.: Touching me.
(Trial Tr., pp. 132-34).
 {¶ 7} J.D. testified that he then heard Michael enter the residence; that he told Michael what happened and they called his father; that his father and Annie returned home; that Annie called the police; and, that he never heard Euton make any statements about touching him.
 {¶ 8} On cross-examination, J.D. testified that his father, Annie, and Euton went to the bar around 11:00 p.m.; that he had met Euton two days before the *Page 5 
incident; that Euton was visiting Annie; that Euton returned from the bar around 2:20 or 2:30 a.m.; that, after stumbling into the house, Euton tripped and fell in the living room where he and his brother were playing video games; that Euton was drunk; that, about five minutes later, he and his brother went to bed; that he and his brother slept on a mattress on the floor of the bedroom; that the mattress was diagonal to Michael's bed, which was on a bedframe against the wall; that the bedroom was dark; that, two minutes after he went to bed, he heard the door slide open; that Euton stumbled into the room and laid on the floor between the mattress and the other bed; that Euton laid on the floor for about ten minutes, but he did not pay any attention to Euton until Euton started touching him; that Euton did not speak after entering the bedroom; and, that he was lying on his back on the mattress. J.D. continued:
 Euton's counsel: Alright. Did you say anything to your brother?
 J.D.: Yeah. I go, "Kirk, he's touching me" and he goes, "I don't know what to do" and I go, "Well" and he goes, "Just get up". And I said I had to use the restroom. I got up, and when I went to get up off my knees, I fell back a little bit and I elbowed [Euton] in the face. Then I got up and I ran out of the room.
(Trial Tr., p. 158). J.D. stated that approximately ten minutes elapsed from the time he left the room and the time Michael arrived home and that, during that time, Euton had gotten up and went into Annie's bedroom.
 {¶ 9} J.D.'s brother, Kirk, testified as follows: *Page 6 
 State: Tell us what you know, what you saw, and what you heard about that.
 Kirk: We were laying (sic.) in bed and J.D. said, "He's touching me, Kirk. He's touching me."
 State: How did he say it. Was it like quiet like you just said it?
 Kirk: Yeah, he whispered it in my ear.
 State: He whispered it?
 Kirk: Yeah, in my ear.
 State: And you were laying (sic.) close together?
 Kirk: Yeah, we were laying (sic.) in the same bed.
 State: Okay. Was he on his back or on his stomach?
 Kirk: On his side.
 State: Okay. And he whispered to you?
 Kirk: "He's touching me, Kirk. He's touching me."
 State: And what happened next?
 Kirk: [J.D.] got up and ran upstairs and I ran up behind him.
 State: And then what happened?
 Kirk: Michael walked in the door and we told Michael.
(Trial Tr., p. 168).
 {¶ 10} On cross-examination, Kirk testified that he was lying on his side with his back toward J.D. when Euton entered the bedroom; that J.D. was also lying on his side facing Kirk; but, that he did not feel Euton's hand between himself and J.D.
 {¶ 11} Annie and J.D.'s father, James, both testified that Euton was the first person in the group to leave the bar on the night of the incident and that, when they arrived home, J.D. was crying, shaking, and upset.
 {¶ 12} On cross-examination, Annie testified that she and Euton shared an entire twelve-pack of beer at her residence before going to the bar and that Euton had some mixed drinks at the bar. *Page 7 
 {¶ 13} On cross-examination, Michael testified that he met up with James, Annie, and Euton at the bar after he got off of work; that Euton was drinking "quite heavily" at the bar (trial tr., p. 238); and, that Euton left the bar before he did and was "stumbling around" (trial tr., p. 241).
 {¶ 14} Patrolman Andrew Liming of the City of St. Mary's police department testified that he was one of the responding officers on the night of the incident; that, when he arrived at the residence, Euton was outside in a corner behind the house with a blanket over his head; and, that Euton appeared intoxicated because he had bloodshot, glassy eyes and emanated a moderate odor of alcohol.
 {¶ 15} At the close of the State's evidence, Euton moved for an acquittal under Crim.R. 29 on the grounds that the State failed to prove the element of "force or threat of force" as required under R.C.2907.05. The trial court denied the motion, providing:
 The Court concludes that a reasonable jury could conclude that such totality of the circumstances did result in sufficient fright; that the adult putting himself in that circumstance would know that that would scare and frighten a fifteen (15) year old. There is certainly sufficient evidence to show that immediately after it occurred that the boy was frightened. But in addition to immediately after it occurred that the boy was frightened, it's very clear that the boy had it experienced long enough that he was being compelled by that fear while he whispered to his brother, "He's touching me. He's touching me." That demonstrates that the boy didn't just immediately upon being touched get up and leave, but instead that the boy was so *Page 8 frightened that he took sufficient time to tell his brother, "He's touching me. He's touching me."
 And it's reasonable that an adult molesting a boy in the boy's only bedroom the boy knows, in the house where he is the only adult, when confronted with a drunken adult male would anticipate and expect that's exactly the reaction he would get, no resistance. Thus compulsion is met.
(Trial Tr., p. 279).
 {¶ 16} Subsequently, Euton's counsel attempted to admit the stipulated results of a blood alcohol content test administered by the police the night of the incident, but the trial court refused to do so unless an expert testified to explain their meaning. Euton did not present such an expert and did not present any other evidence or testimony.
 {¶ 17} Thereafter, Euton renewed his motion for judgment of acquittal under Crim.R. 29 on the same grounds as his previous motion for judgment of acquittal. The trial court again denied the motion, providing:
 [I]t would be reasonable to believe [Euton] being the only adult there, that his going into that bedroom, laying down beside the boy, moving the blanket and applying enough force to be able to get his hand under the blanket and fondle the boy's penis through the sweatpants would, in fact, involve an element of coercion and fear and compulsion; that the boy was indeed afraid as the boy whispered to his brother, "He's touching me. He's touching me." Which indicated that that was long enough to evidence that, in fact, the boy was compelled and there was a degree of compulsion, however slight, and it will be up to the Jury to decide as to whether that amounts to force or not. *Page 9 
(Trial Tr., pp. 289-90). The trial court proceeded to instruct the jury on gross sexual imposition, voluntary intoxication, and the lesser offense of sexual imposition.
 {¶ 18} Subsequently, the jury found Euton guilty of gross sexual imposition as charged in the indictment.
 {¶ 19} In August 2006, the trial court sentenced Euton to a sixteen-month prison term and classified him as a sexual predator.
 {¶ 20} It is from his conviction and sentence that Euton appeals, presenting the following assignments of error for our review.
 Assignment of Error No. I IT WAS A VIOLATION OF APPELLANT'S CONSTITUTIONAL RIGHTS TO HAVE BAIL AT 50 THOUSAND DOLLARS.
 Assignment of Error No. II THE TRIAL COURT ERRED WHEN IT FOUND THAT THE ACT OF LIFTING A BLANKET TO BE CONSIDERED (Sic.) FORCE UNDER OHIO REVISED CODE SECTION 2901.01.
 Assignment of Error No. III APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.
 Assignment of Error No. IV DEFENDANT WAS NOT AFFORDED THE RIGHT TO A SPEEDY TRIAL AS REQUIRED BY OHIO REVISED CODE SECTION 2945.71(E). *Page 10 
 {¶ 21} Due to the nature of Euton's assignments of error, we elect to address them out of order.
 Assignment of Error No. IV {¶ 22} In his fourth assignment of error, Euton asserts that his right to a speedy trial under R.C. 2945.71(E) was violated.[1] We disagree.
 {¶ 23} Our standard of review upon an appeal raising a speedy trial issue is to count the expired days as directed by R.C. 2945.71, et seq.State v. DePue (1994), 96 Ohio App.3d 513, 516; see, also, State v.West, 3d Dist. No. 2-06-04, 2006-Ohio-5834; Cleveland v. SeventeenthStreet Ass'n, 8th Dist. No. 76106, 2000 WL 426553. If any ambiguity exists, we construe the record in favor of the accused. State v.Mays (1996), 108 Ohio App.3d 598, 609; State v. Mitchell (1991), 8th Dist. No. 76106, 1991 WL 106037.
 {¶ 24} The applicable statutory speedy trial provision, R.C.2945.71(C)(2), provides that a person against whom a felony charge is pending must be brought to trial within two-hundred seventy days after the person's arrest. Additionally, the triple-count statute, R.C.2945.71(E), provides that, for computation purposes, each day that an accused spends in jail in lieu of bond on the pending charge shall count as three days. R.C. 2945.71 is "mandatory and must be strictly complied *Page 11 
with by the state." State v. Pudlock (1975), 44 Ohio St.2d 104, 105, citing State v. Gray (1964), 1 Ohio St.2d 21 and State v. Cross (1971),26 Ohio St.2d 270.
 {¶ 25} Here, the record reflects that Euton was arrested on March 15, 2006 and that trial commenced on May 30, 2006. Given that Euton was held in lieu of bail on the pending charge, he was required to be brought to trial within ninety days under the triple-count provision. A total of seventy-six days elapsed from the date of Euton's arrest to the date his trial commenced, which is within the time limit set forth in R.C.2945.71(C)(2) and (E). Thus, we find that Euton's right to a speedy trial was not violated.
 {¶ 26} Accordingly, we overrule Euton's fourth assignment of error.
 Assignment of Error No. I {¶ 27} In his first assignment of error, Euton asserts that the trial court violated his constitutional rights by setting his bail at fifty-thousand dollars. Specifically, Euton contends that his rights under the Eighth Amendment to the United States Constitution and ArticleI, Section 9 of the Ohio Constitution were violated because the bail amount was excessive given he did not possess the financial resources to pay it.
 {¶ 28} It is well-established that, when a defendant alleges that pretrial bail is excessive, the proper procedure for relief is through habeas corpus proceedings. State v. Patterson (1996),110 Ohio App.3d 264, 272, citing State ex rel. Baker v. Troutman (1990),50 Ohio St.3d 270, Jenkins v. Billy (1989), 43 Ohio St.3d 84, *Page 12 
and State v. Bevacqua (1946), 147 Ohio St. 20. Otherwise, "[i]f appeal is the only remedy but must be deferred until judgment of conviction or acquittal, all questions as to bail before and during trial would become moot or foreclose[d] and appeal would avail him nothing." State v.Bevacqua (1946), 147 Ohio St. 20, 23; see, also, State v. Drummond,111 Ohio St.3d 14, 2006-Ohio-5084, at ¶ 206.
 {¶ 29} Here, Euton failed to seek a writ of habeas corpus regarding his pretrial bail and was later convicted. We see no reason to deviate from the foregoing, well-established rule, and our disposition of Euton's second assignment of error does not alter the outcome. Thus, we find that Euton's argument regarding excessive pretrial bail is moot.
 {¶ 30} Accordingly, we overrule Euton's first assignment of error.
 Assignment of Error No. II {¶ 31} In his second assignment of error, Euton asserts that the trial court erred by finding that the act of lifting a blanket constituted force under R.C. 2901.01. Specifically, Euton contends that the trial court erred in overruling his Crim.R. 29 motion for acquittal because the State failed to prove the "force or threat of force" element required for a gross sexual imposition charge. We agree.
 {¶ 32} Under Crim.R. 29, a trial court, on a defendant's motion or its own motion, "after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of *Page 13 
such offense or offenses." Crim.R. 29(A). However, a court shall not order an entry of judgment of acquittal under Crim.R. 29(A) if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. State v. Bridgeman (1978), 55 Ohio St.2d 261. A motion for acquittal tests the sufficiency of the evidence. State v. Miley
(1996), 114 Ohio App.3d 738, 742.
 {¶ 33} When an appellate court reviews a record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Monroe (2005), 105 Ohio St.3d 384, 392, citing State v.Jenks (1991), 61 Ohio St.3d 259, superseded by state constitutional amendment on other grounds as stated in State v. Smith,80 Ohio St.3d 89, 1997-Ohio-355. Sufficiency is a test of adequacy, State v.Thompkins (1997), 78 Ohio St.3d 380, 386, and the question of whether evidence is sufficient to sustain a verdict is one of law. State v.Robinson (1955), 162 Ohio St. 486.
 {¶ 34} R.C. 2907.05, the gross sexual imposition statute, provides in pertinent part:
 No person shall have sexual contact with another, not the spouse of the offender,* * * when any of the following applies: (1) The offender purposely compels the other person, or one of the other persons, to submit by force or threat of force. *Page 14 
R.C. 2907.05(A)(1). "Force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). Additionally, a victim "need not prove physical resistance to the offender." R.C. 2907.05(C).
 {¶ 35} The Ohio Supreme Court has addressed the issue of "force or threat of force" several times. For instance, in analyzing "force or threat of force" in the context of the rape statute, R.C. 2907.02, the Court stated that the amount of force necessary to commit the offense "depends upon the age, size and strength of the parties and their relation to each other." State v. Eskridge (1988), 38 Ohio St.3d 56, paragraph one of the syllabus. Specifically, in cases involving the "filial obligation of obedience to a parent," a lesser showing of force may be sufficient. Given the inherent coercion in parental authority when a parent abuses his or her child, the requisite force "`need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the * * * victim's will was overcome by fear or duress, the forcible element * * * can be established.'" Id. at 58-59, quoting State v. Fowler (1985), 27 Ohio App.3d 149, 154
(citations omitted).
 {¶ 36} The Supreme Court clarified Eskridge in State v. Schaim (1992),65 Ohio St.3d 51, stating that, in Eskridge, it "recognized that coercion is inherent in the parent-child relationship and that underthese special circumstances `[f]orce need not be overt and physically brutal, but can be subtle and psychological.'" *Page 15 Schaim, 65 Ohio St.3d at 54-55, quoting Eskridge, 38 Ohio St.3d at 58-59
(emphasis added) (finding that lesser degree of force standard established in Eskridge did not apply in forcible rape case involving 20-year old victim, despite evidence of a prolonged pattern of abuse by her father).
 {¶ 37} In State v. Dye (1998), 82 Ohio St. 3d 323, the Supreme Court further held that the lesser showing of force principles established inEskridge also applied to situations where a parent-child relationship was absent, but the adult defendant stood in a position of authority over the child victim and that, therefore, force or threat of force could be met "without evidence of express threat of harm or evidence of significant physical restraint." 82 Ohio St.3d at 329 (finding adult defendant held position of authority over child victim given the defendant had known the child's mother for seven years, had developed a close relationship with the child, and the child's mother had instructed the child to obey the defendant while in his care).
 {¶ 38} In the context of teenage victims and adult defendants, the "force or threat of force" element was met where a fourteen-year old victim was told by her step-father, an important authority figure to her, to commit sexual acts with him and not to tell anyone,Fowler, 27 Ohio App.3d 149, and where two fourteen-year old victims feared the accused to the extent they felt they could not leave after he placed his hand inside their clothes, grabbed one victim's arm when she tried to *Page 16 
leave, and told his son and another girl who happened upon the scene to go away. State v. Drayer, 159 Ohio App.3d 189, 2004-Ohio-6120.
 {¶ 39} Conversely, the "force or threat of force" element was not met where an adult defendant asked his thirteen-year old daughter to sit on his lap and, thereafter, began kissing her and touching her buttocks because she did not sit on her father's lap out of fear or coercion; because she was not aware of his intent until he started kissing and touching her; because, once he started kissing and touching her, she immediately jumped up, pulled her skirt down, and went to the telephone to call her mother; because jumping up and going to the phone demonstrated that her will was not overcome; and, because he did not say anything to her before or after she got up from his lap. State v.Mitchell (1991), 8th Dist. No. 58447, 1991 WL 106037. Similarly, the "force or threat of force" element was not met where a fifteen-year old victim awoke in her bed to find the adult defendant touching her genitals over her clothing because he did not apply any force in relation to her body or clothing; because he did not hold a position of authority over her; because, as the victim became aware of the touching, she immediately got up and left the area; and, because the contact did not occur due to fear or duress. State v. Byrd, 8th Dist. No. 82145, 2003-Ohio-3958.
 {¶ 40} Here, Euton argues that the trial court erred by finding that the act of lifting the blanket satisfied the "force or threat of force" element to overcome his Crim.R. 29 motion for judgment of acquittal. In light of the above cases, it is clear *Page 17 
that the lesser showing of force standard, i.e. subtle or psychological force, does not apply here because Euton did not have a parent-child relationship with J.D. and did not hold a position of authority over J.D. J.D. had only met Euton two days before the incident occurred, there was no evidence that either J.D.'s father or Annie instructed J.D. to follow any orders given by Euton, and J.D. gave no indication in his testimony that he viewed Euton as an authority figure.
 {¶ 41} Taking into account the other Eskridge factors indicates that Euton's act of slipping his hand under the blanket to touch J.D., as repulsive as that conduct may be, in no way implies force or threat of force. This is particularly so given that Euton made no comments or threats to J.D.; that J.D. paid no attention to Euton during the ten-minute time frame that elapsed between the time Euton entered the room and the time he touched J.D.; that Euton did not apply any force in relation to J.D.'s body or clothing; that, as soon as J.D. overcame his surprise at the touching — a mere matter of seconds — he jumped up and left the bedroom; and, that the record contained no evidence of any attempt by Euton to restrain J.D. from getting up or leaving the bedroom.
 {¶ 42} The trial court seemed to place much emphasis on the fact that J.D. told Kirk that Euton was touching him in determining that a reasonable jury could conclude that J.D.'s will was overcome. However, the exchange between J.D. and Kirk was obviously quite short, J.D. almost immediately jumped up and left the room, and J.D. gave no indication in his testimony that he felt compelled to lie *Page 18 
there and allow the touching to continue. To the contrary, J.D. almost immediately jumped up and left the room, demonstrating unequivocally that his will had not been overcome. To find otherwise on these facts would render the distinction between sexual imposition and gross sexual imposition meaningless, extend the lesser showing of force standard to any adult-child situation, regardless of whether the adult held a position of authority over the child, and essentially allow any inappropriate touching to constitute gross sexual imposition, regardless of the use of force or a threat of force.
 {¶ 43} Further, the trial court and the dissent have focused on J.D.'s fear and emotional reaction to the unwanted advances of Euton. Such fear and emotions are normal and expected. However, both the trial court and the dissent have failed to recognize that "force or threat of force" is not proven unless and until the State proves beyond a reasonable doubt that the will of the victim was overcome. The evidence on this issue clearly prevented that conclusion, since J.D. reacted quickly and refused to allow the unwanted touching to continue. Momentary surprise or shock is not sufficient to demonstrate that the victim's will has been overcome. For these reasons, we find that reasonable minds could not conclude that "force or threat of force" had been proved beyond a reasonable doubt and that the trial court erred in overruling Euton's Crim.R. 29 motion for judgment of acquittal.
 {¶ 44} Accordingly, we sustain Euton's second assignment of error. *Page 19 
 Assignment of Error No. III {¶ 45} In his third assignment of error, Euton asserts that he was denied effective assistance of counsel. Specifically, Euton contends that his trial counsel was prejudicially deficient by failing to deliver an effective opening statement; by failing to object to certain leading questions during the victim's and the victim's brother's testimony; by failing to effectively cross-examine witnesses; by failing to present sufficient evidence regarding "force or threat of force"; by failing to present sufficient evidence to establish the affirmative defense of intoxication; and, by failing to properly preserve his proposed jury instructions for appeal. We disagree.
 {¶ 46} An ineffective assistance of counsel claim requires proof that trial counsel's performance fell below objective standards of reasonable representation and that the defendant was prejudiced as a result.State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of syllabus. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, but for counsel's errors, the outcome at trial would have been different. Id. at paragraph three of syllabus. "Reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. State v. Waddy (1992), 63 Ohio St.3d 424, 433, superseded by state constitutional amendment on other grounds as recognized by State v. Smith, 80 Ohio St.3d 89, 103, 1997-Ohio-355. *Page 20 
 {¶ 47} Furthermore, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. Strickland v. Washington (1984), 466 U.S. 668; State v.Richardson, 3d Dist. No. 13-06-21, 2007-Ohio-115, citing State v.Hoffman (1998), 129 Ohio App.3d 403, 407. Tactical or strategic trial decisions, even if unsuccessful, generally do not constitute ineffective assistance. State v. Carter (1995), 72 Ohio St.3d 545, 558. Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. Bradley, 42 Ohio St.3d at 141-42, citingState v. Lytle (1976), 48 Ohio St.2d 391, 396. The court must look to the totality of the circumstances and not isolated instances of an allegedly deficient performance. State v. Fritz, 3d Dist. No. 13-06-39,2007-Ohio-3138, at ¶ 35, citing State v. Malone (1989), 2d Dist. No. 10564, 1989 WL 150798.
 {¶ 48} Here, Euton raises various arguments to support his ineffective assistance of counsel claim. Upon reviewing the record, we find no merit in Euton's arguments. The focus of trial counsel's opening statement, closing statement, and his cross-examination of J.D. could quite simply have constituted trial strategies based on reasonable professional judgment. Additionally, trial counsel objected on numerous occasions throughout the trial to the State's persistent use of leading questions during direct examination, some of which the trial court overruled. Trial counsel's failure to object to every leading question *Page 21 
could have been reasonable trial strategy given that constant objections could have worked against Euton. Moreover, while trial counsel failed in his attempt to admit the blood alcohol content test results, he did elicit testimony on cross-examination of numerous witnesses that Euton had been drinking heavily and was drunk on the night of the incident. Likewise, trial counsel raised the issue of force or threat of force in both of the Crim.R. 29 motions. Regarding the jury instructions, Euton has not alleged any improprieties and, therefore, we fail to see how trial counsel's failure to preserve his proposed jury instructions was deficient. Thus, we find that Euton was not deprived of effective assistance of counsel.
 {¶ 49} Accordingly, we overrule Euton's third assignment of error.
 {¶ 50} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued in his first, third, and fourth assignments of error, but having found error prejudicial to the appellant herein in his second assignment of error, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.
Judgment Reversed and Cause Remanded.
 WILLAMOWSKI, J.J., concurs.
[1] We note that Euton's appellate counsel sought to withdraw this assignment of error at oral argument. Nevertheless, we elect to address it. *Page 22