[Cite as *State v. Atkins*, 2017-Ohio-7282.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### MERCER COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                 CASE NO.  10-17-04

      v.

CASEY L. ATKINS,                     O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Mercer County Common Pleas Court
Trial Court No. 16-CRM-139

Judgment Affirmed

Date of Decision:    August 21, 2017

APPEARANCES:

    *Richard M. Delzeith* for Appellant

    *Matthew K. Fox and Joshua A. Muhlenkamp* for Appellee

**ZIMMERMAN, J.,**

{¶1} Defendant-appellant, Casey Atkins ("Atkins") appeals the judgment and sentence of the Mercer County Common Pleas Court wherein he was found guilty of one count of Robbery in violation of 2911.02(A)(3) by R.C. 2911.02(B), a felony of the third degree, and one count of Theft in violation of 2913.02(A)(1) and 2913.02(B)(2), a felony of the fifth degree.

### *Facts and Procedural History*

{¶2} On November 17, 2016, Atkins was indicted on two criminal counts in Mercer County: Count One, Robbery, in violation of R.C. 2911.02(A)(3) by R.C. 2911.02(B), a felony of the third degree; and Count Two, Theft, in violation of R.C. 2913.02(A)(1) and (B)(2), a felony of the fifth degree. The charges stem from a bank robbery that occurred at the Second National Bank in Celina, Ohio on September 23, 2016. Atkins pled not guilty to each count on November 28, 2016.

{¶3} On January 18-19, 2017, the case proceeded to a trial to the court. At trial the State called ten (10) witnesses. However, only the testimonies of the following witnesses are relevant in our appellate review as the appellant has only appealed the trial court's verdict on his robbery conviction: Allison Byron ("Byron"), the bank teller at Second National Bank; Atkins' two co-defendants, Timothy Rios ("Rios") and Joshuia Bursey ("Bursey"); and Detective Ron Waltmire ("Detective Waltmire"), with the Celina Police Department.

{¶4} At the conclusion of the State's case in chief, defense counsel made a Criminal Rule 29 motion for acquittal arguing that the State failed to prove all of the elements of robbery. The trial court overruled the Rule 29 motion and Atkins did not present a defense thereafter.

{¶5} The trial court found Atkins guilty of Robbery and Theft and sentenced him to thirty months in prison.[1] On March 22, 2017, the trial court filed its judgment entry memorializing Atkins' sentence. It is from this judgment that Atkins appeals, asserting the following assignment of error for our review.

### ASSIGNMENT OF ERROR

**THE STATE FAILED TO INTRODUCE SUFFICIENT EVIDENCE OF THE CHARGE OF ROBBERY, A RESULTING CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND DEPRIVED THE DEFENDANT OF SUBSTANTIVE AND PROCEDURAL DUE PROCESS IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.**

{¶6} In his sole assignment of error, Atkins argues that his conviction for robbery was not supported by sufficient evidence *and* is against the manifest weight of the evidence. Specifically, Atkins contends that the element of "force" was not proven by the State to satisfy that particular element of robbery. Because we apply different standards of review for sufficiency and manifest weight of the evidence, we will discuss those standards separately. However, we will analyze appellant's

---

[1] Atkins was given credit for 153 days served. Atkins was also sentenced to pay $6,692 in restitution to Second National Bank.

arguments together. We note that the trial court found the theft and robbery convictions were merged. Atkins does not contest his conviction and sentence for Theft under Count Two, so we will just review the evidence as it relates to his Robbery conviction.

### *Sufficiency of Evidence*

{¶7} When reviewing a case to determine whether the record contains sufficient evidence to support a conviction, our role "is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt". *State v. Jenks*, 61 Ohio St.3d 259, at paragraph two of the syllabus.

{¶8} The claim of insufficient evidence raises a question of law and does not allow the court to weigh the evidence. *State v. Martin*, 20 Ohio App.3d 172, 175. Thus, this standard "gives full play to the responsibility of the trier of fact * * * to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts". *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Accordingly, the weight given to the evidence and the credibility of

witnesses are issues for the trier of fact. *State v. Thomas*, 70 Ohio St.2d 79, 79-80 (1982), *State v. DeHass*, 10 Ohio St.2d 230 (1967).

### *Manifest Weight*

{¶9} When determining whether a conviction is against the manifest weight of the evidence, we "will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt". *State v. Eskridge*, 38 Ohio St.3d 56 (1988), at paragraph two of the syllabus.

{¶10} In reviewing whether the trial court's judgment was against the weight of the evidence, the appellate court sits as the "thirteenth juror" and examines the conflicting testimony. *State v. Thompkins*, 78 Ohio St.3d 380, 387. In taking on this role, this court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in reviewing the evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *Id*. In making this analysis, we must be mindful that determinations of credibility and weight of the testimony remain within the jurisdiction of the trier of fact. *DeHass*, *supra*, paragraph one of the syllabus.

{¶11} When applying the manifest weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction', should an

appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶119. "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' " (Emphasis omitted.) *Thompkins*, quoting Black's Law Dictionary 1594 (6th Ed.1990).

*Analysis*

{¶12} In this case, Atkins was indicted for Robbery in violation of R.C. 2911.02(A)(3) which reads:

> **(A)  No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:**
>
> **\* \* \***
>
> **(3)    Use or threaten the immediate use of force against another.**

Force is defined by R.C. 2901.01(A)(1) as, "*any* violence, *compulsion*, or constraint physically exerted by any means upon or against a person or thing". (Emphasis added.) "By its plain language, the definition provides 'any' violence, compulsion

or constraint by 'any means.' " *State v. Stevens*, 3d Dist. Allen No. 1-14-58, 2016-Ohio-446, citing *State v. Euton*, 3d Dist. Auglaize No. 2-06-35, 2007-Ohio-6704, quoting R.C. 2901.01(A)(1). "Simply put, 'any' means 'any'. *Id.* "As used in R.C. 291.01(A)(1) 'any' is an adjective." *Id.* "As an adjective, 'any' is defined as: [o]ne or some, regardless of kind, quantity, or number; an indeterminate number or amount.' " *Id.*, quoting *The American Heritage Dictionary* 117 (2d College Ed. 1985).

{¶13} The definition of force includes force by any violence, compulsion or constraint. Black's Law Dictionary defines compulsion as "[t]he act of compelling; the quality, state, or condition of being compelled." *Stevens*, *supra*, quoting *Black's* at 348. "Black's Law Dictionary also describes, '[c]ompulsion can take other forms than physical force, but in whatever form it appears * * * [i]t can best be considered under the heads of obedience to orders, material coercion, duress per minas, and necessity." *Stevens*, quoting Turner, *Kenny's Outlines of Criminal Law* 54 (16th Ed. 1952).

{¶14} Historically this Court has determined that "the key inquiry for determining whether the State presented sufficient evidence on the element of force is whether the 'victim's will was overcome by fear or duress.' " *Stevens*, *Id.*, citing *State v. Wine*, 3d Dist. Auglaize No. 2-12-01, 2012-Ohio-2837, at ¶40, quoting *In re Forbess*, 3d Dist. Auglaize No. 02-09-20, 2010-Ohio-2826, citing *State v. Heft*,

3d Dist. Logan No. 08-09-08, 2009-Ohio-5908, ¶88, citing *State v. Eskridge*, *supra*. Further, we have found that, "[w]hile this inquiry is taken from *State v. Eskridge* where the victim was a young child, this inquiry is not limited to such cases since Eskridge cited to *State v. Martin*, 77 Ohio App. 553 (9th Dist. 1946), where the victim was an adult, and stated this standard was a general rule of law". *Stevens*, *Id*. quoting *Wine*, citing *State v. Rupp*, 7th Dist. Mahoning No. 05 MA 166, 2007-Ohio-1561, ¶25-28.

{¶15} In our review of the record, the State produced evidence that on September 23, 2016, Joshuia Bursey ("Bursey") entered the Second National Bank in Celina, Ohio, handed the bank teller, Allison Byron, a bag and said "this is a robbery, put the money in the bag". (Tr. 13). Without hesitation, Byron complied with Bursey's demand by placing the money from her bank drawer in the bag. Bursey then asked Byron if she was working alone, and ordered her to put the money from another teller's bank drawer in the bag as well. (Tr. 13-14). When Byron finished, she returned the bag (filled with money) to Bursey, who then fled the bank. Bursey was in the bank for less than three minutes.

{¶16} The State's evidence revealed that Bursey had a long history of drug abuse and the demanding debt associated with it. It was after Bursey robbed a bank in Fort Wayne, Indiana (on or about September 19, 2016) to pay off his then existing drug debt that he met Casey Atkins ("Atkins"). At this point, Atkins began to supply

Bursey with heroin which resulted in Bursey owing Atkins money. So, in order to pay this debt (to Atkins), the two planned for Bursey to rob another bank. (Tr. 250-251).

{¶17} Bursey testified that Atkins chose a bank in Michigan for him (Bursey) to rob. Atkins then rented a car to be used in the robbery. (Tr. 251). Bursey further testified that co-defendant, Timothy Rios ("Rios"), a friend of Atkins', joined to assist in the planning and execution of the robbery. However, Bursey got a "bad feeling" about traveling to Michigan to rob a bank, so, on the evening of September 22, 2016 and into the early morning hours of September 23, 2016, the three men decided to look for a different bank to rob. (Tr. 252 – 254).

{¶18} Bursey's testimony revealed that on the morning of September 23, 2016, Atkins gave money to Bursey for heroin. (Tr. 256). Thereafter, Atkins, Bursey and Rios left Ft. Wayne, together in the same car, followed by Kathryn Howard ("Howard") and Samantha Craft ("Hula"), friends of Atkins, in another car, looking for a bank to rob.

{¶19} Eventually, the group ended up in Celina, Ohio where they stopped to eat at a Burger King, but only Howard and Hula entered the restaurant. While Howard and Hula were in the restaurant, Atkins moved their car while Rios and Bursey went across the street to a Sunoco gas station to get bags for the robbery.

Case No. 10-17-04

Rios and Bursey then drove by Second National Bank to arrange a getaway plan and then met back at Burger King with Atkins to put their plan into action.

{¶20} Pursuant to their plan, Rios and Bursey left Burger King and drove to Second National Bank for Bursey to commit the robbery while Atkins left the area with Howard and Hula. The group planned to meet after the robbery. Thereafter, while Rios waited in the getaway car, Bursey entered Second National Bank, committed the robbery, and fled the scene (with Rios). When they returned to Fort Wayne, Bursey and Rios met up with Atkins, and the money was divided. (Tr. 280).

{¶21} When questioned, Bursey admitted to robbing the bank testifying as follows:

> Q. (Prosecuting Attorney) When you went in, did you see anybody working?
> A. Yeah. There was just one lady.
> Q. And did you talk to her?
> A. Yeah. I walked in, and I - -I - - I said, I walked in, and I - - I can't remember my exact words, but I basically said, you know, this is a robbery, or you know, I'm here to rob you, or whatever, you know? And she just kind of looked at me at first, kind of like dumbfounded, you know? And then I pulled the bag out of my sleeve, and she is like, you know, she is like really scared, like - - not like shaking, trembling, but kind of trembling, you know, that really nervous feeling and - -
> Q. She appeared scared to you?
> A. Yes. * * * And so I said, okay, is there - - basically is there more money, some more money, and she said the lady's name's drawer. And I said okay, you know, give that to me too. And so - -
> Q. Is she still shaking a little bit?
> A. Yeah. She - -
> Q. Trembling?

**A.    She's scared to death.  She was really scared.**

(Tr. 264-265).  However, Bursey's testimony as far as the planning of the robbery,

revealed the following:

> **Q.    (Prosecuting Attorney)      \* \* \* What about the Celina one,**
> **was that your idea to rob a bank?**
> **A.    (Bursey)       No.  I mean - -**
> **Q.    Whose idea was it?**
> **A.    It was me and Casey's, and like, you know, I didn't have any**
> **money, I didn't have nowhere to go, and Casey is like, hey, you**
> **know, I'll help you out, we can rob another bank, and I'll get you**
> **set up.**
> **Q.    And did you owe Casey money?**
> **A.    I mean, he was investing a lot of money.  He had given me**
> **some drugs and rented a car and all that, and had mentioned a**
> **few times that, you know, he's invested all his money in this.**
> **Q.    And so did you feel like you had to?**
> **A.    Pretty much.**

(Tr. 275-276).

> **{¶22}** And, when questioned further, Bursey testified:

> **Q.    (Prosecuting Attorney)      I don't want to speculate about**
> **banks you didn't rob.  The Celina bank, whose idea?**
> **A.    Casey Atkins.**
> **Q.    Who's in charge?**
> **A.    Casey Atkins.**
> **Q.    What did he invest in ahead of time?**
> **A.    The driver, the car and - - pretty much all the money and the**
> **driver and drugs.**

(Tr. 318).

> **{¶23}** Additionally, Atkins' presence in Celina at the time of the robbery was

also established through Detective Waltmire's testimony.  Detective Waltmire's

testimony revealed that in the course of his investigation of this case, he viewed the surveillance videos from Second National Bank, Burger King and the Sunoco gas station. In reviewing these videos, and with the help of other witnesses, he was able to identify Atkins, Rios and Bursey at the above locations at, or near, the time the bank was robbed.

{¶24} The trial court, in its judgment entry, found that "Bursey, in committing a theft offense upon Second National Bank, threatened the immediate use of force against Allison Byron in her capacity as teller of the bank and did knowingly obtain $6,692 in cash from the bank with purpose to deprive the bank of that money without the bank's consent or without the consent of any person authorized to give consent, that sum being more than $1,000, but less than $7,500". (Doc. 92). The trial court further found, beyond a reasonable doubt, that Atkins was also guilty in the Robbery and Theft stating "because with the same knowledge and purpose displayed by Mr. Bursey and acknowledged by him in his testimony, Mr. Atkins solicited, procured, or caused Mr. Bursey; conspired with him, and aided and abetted him to commit these offenses". (*Id.*).

{¶25} Based upon our review of the record, we find that Atkins was intricately involved with a conspiracy to rob the Second National Bank in Celina with Bursey and Rios. Atkins provided a vehicle to Bursey and helped develop the plan to rob the bank. Thus, the sole issue remaining is to determine whether

sufficient evidence exists in the record as to whether Bursey's conduct while in the bank supports the trial court's finding that a robbery occurred.

{¶26} We find that the State's evidence was sufficient for the trial court to find that Bursey's conduct while in the bank satisfied the element of "force" (beyond a reasonable doubt). Even though Bursey did not brandish a weapon, such is not required to prove the element of "force". As we noted above, "force" means "any compulsion" by "any means". *Stevens*, *Id.* And "compulsion" occurs "under the heads of obedience to orders". *Id.* Thus, we find Bursey's statement to the bank teller (Byron) of "this is a robbery, put the money in the bag", under the circumstances of this case, meets the definition of "force". Moreover, we find that Bursey's statement was a command (to Byron) that she obeyed because she was afraid. As proven through Bursey's testimony, Byron was "scared to death" as a result of his demand for money. As such, competent and credible evidence exists in the record justifying that the element of "force" was proven by the State beyond a reasonable doubt.

{¶27} "Unlike our review of the sufficiency of the evidence, an appellate court's function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict." *State v. Schaeffer*, 3d Dist. Seneca No. 13-14-34, 2015-Ohio-3531, ¶15, citing *Thompkins*. In reviewing whether the trial court's judgment was against the weight of the evidence, the

appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *Id*. In doing so, this Court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Holmes*, 3d Dist. Hancock No. 5-15-06, 2015-Ohio-5050, ¶46, quoting *Thompkins* at 387.

{¶28} In the case *sub judice*, we cannot say that the trier of fact lost its way or committed a manifest injustice in making its determination of Atkins' guilt. At trial, both Rios and Bursey testified of planning the robbery (with Atkins) (Tr. 179, 250-257, 263), that Atkins was the "mastermind" behind the robbery (Tr. 179, 190, 195, 250) and that Atkins rented them a car to use in the robbery. (Tr. 251). The State also produced the videotape surveillance recordings that placed Atkins with Rios and Bursey in Celina just moments before the robbery. Lastly, the State produced evidence as to the bank teller's state of mind during the robbery, as being "scared to death" (Tr. 265) establishing that Bursey used force while committing his theft offense at the bank in Celina. Therefore, we cannot say that Atkins' robbery conviction was against the manifest weight of the evidence.

{¶29} Atkins' sole assignment of error is overruled.

**{¶30}** Having found no error prejudicial to the appellant herein in the particular assignment of error, we affirm the judgment of the trial court.

*Judgment Affirmed*

**PRESTON, P.J. and WILLAMOWSKI, J., concur in Judgment Only.**

**/jlr**