OPINION *Page 2 
{¶ 1} Appellant Rodney G. Pollard appeals his conviction and sentence entered in the Licking County Court of Common Pleas, on four counts of sexual battery, two counts of gross sexual imposition and one count of rape.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On January 24, 2008, Appellant Rodney Pollard was indicted on four counts of sexual battery, in violation of R.C § 2907.03(A)(5), two counts of gross sexual imposition, in violation of R.C. § 2907.05(A)(1), and one count of rape, in violation of O.R.C. § 2907.02(A)(2).
 {¶ 3} These charges arise from the following undisputed facts:
 {¶ 4} Appellant Rodney Pollard is the father of the alleged victim in this case, S.P., who was born on October 8, 1991, and was fourteen when these events began. (T. at 83) (T. at 84-85). During the timeframe the events in the indictment are alleged to have occurred, S.P. lived with Appellant in Heath, Ohio. (T. at 84). At the time, S.P.'s older sister Lindsay, Lindsay's boyfriend and Lindsay's son also lived in the home. (T. at 84).
 {¶ 5} From August, 2006, through January, 2007, S.P. alleges that Appellant touched her inappropriately and engaged in oral intercourse with her on numerous occasions. (T. at 104). In one instance, S.P. alleges that Appellant engaged in vaginal intercourse with her. (T. at 96-97). Although S.P. testified that this conduct was on-going between the months of August and January, she was able to specifically identify four distinct instances which were the basis of counts one through five. *Page 3 
 {¶ 6} The first incident of inappropriate conduct alleged by S.P. occurred in either August or September of 2006 when Appellant was showing S.P. around the house at 628 Fulla Lane before they had moved all of the furniture and possessions into the home. (T. at 85). S.P. testified that while she and Appellant were discussing how his room was going to be arranged, Appellant told her to take off all her clothes. (T. at 86). After S.P. removed her clothes, Appellant removed his clothes and then lay down on the floor and told her to lie on top of him in a "69" position and engage in oral sex with him. (T. at 86-87). S.P. complied, indicating that she did so because Appellant was bigger than her and because she was supposed to listen to what her father tells her. (T. at 86). S.P. stated that they remained in that position for five or ten minutes until Appellant ejaculated. (T. at 89). Appellant did not say anything to S.P. after the incident and acted as though it did not happen. (T. at 89).
 {¶ 7} The second alleged incident occurred on S.P.'s fifteenth birthday. (T. at 89-90). Appellant had sent roses to S.P. at school on the Friday before. (T. at 90). A few days later, S.P. testified that she came home to find a note on her bed and an outfit laid out for her to wear. (T. at 91). The note indicated that she was to get ready to have the time of her life and to meet Appellant in his room. (T. at 91). The outfit consisted of the skirt that went with her bathing suit bottoms and a bra. (T. at 91). When S.P. went to Appellant's room she was greeted with rose petals on the bed, lit candles, chocolate syrup, candy, and a box of condoms. (T. at 92). Later, when Appellant came home, S.P. stated that he told her to come down to his room. (T. at 93). After she arrived in his room, Appellant removed her clothing, rubbed her body with baby oil and engaged in oral and vaginal sex with her. (T. at 94-97). S.P. indicated that at one point she had told *Page 4 
Appellant that she did not want to have sex with him but he encouraged her to do it just this one time. (T. at 97). This incident was the basis of the rape alleged in count two and the sexual battery alleged in count three.
 {¶ 8} S.P. also testified that on another occasion, in January, on a morning after she had come home one-half hour late after a swim meet and had not called, Appellant told her to get out of bed so she got up and went to his room. (T. at 97-98). At that time he asked her "what's your problem, why are you being like this" and she told him she "didn't want this to happen anymore" and that she "wanted things to change." (T. at 98). She stated that her sister suggested that they all go out to eat and she told Appellant that she was going to go upstairs and take a shower before they went out. Id. At that time Appellant told her that he was going to pick out her clothes for her. Id. She told him she did not want him to do that to which he stated that she was not allowed to wear a bra or underwear unless it was a thong. Id. At that time, while they were still sitting on Appellant's bed, Appellant reached over and "kind of pinched [her] breasts". (T. at 99). She further described the touch as "[n]ot really pinched, but touched it enough to where it felt like a pinch." Id. She then backed away from Appellant and he told her "get away", commenting on how she was never going to change. Id. She testified that when she went back upstairs her sister asked her what was happening and she told her sister of the abuse. (T. at 99-100). After this, S.P. was taken by her sister to live with her mother in Indiana. (T. at 102). It was the touching of S.P.'s breast that was the conduct alleged in count four, the gross sexual imposition.
 {¶ 9} S.P. alleges that during the time period the abuse was occurring, between August 1, 2006, and January 13, 2007, Appellant inappropriately touched her thirty to *Page 5 
fifty times and engaged in oral sex with her ten to fifteen times. (T. at 118). Counts five and six for sexual battery and gross sexual imposition are based on these offenses which could not be linked to specific dates.
 {¶ 10} It was later in her testimony, that S.P. acknowledged that the reason she had not revealed the abuse to anyone was that her father had told everyone that she was a liar and that she did not think anyone would believe her if she supposedly lied all the time. (T. at 107). At no time did S.P. indicate that she had any fear of Appellant.
 {¶ 11} Appellant initially entered a plea of Not Guilty to the seven counts of the indictment.
 {¶ 12} On June 12 and 13, 2008, the matter then proceeded to trial by jury. On June 13, 2008, after considering the arguments of counsel and the evidence presented, the jury returned a verdict of Guilty on all seven counts of the indictment.
 {¶ 13} On July 31, 2008, a sentencing hearing was held and Appellant was sentenced to three years in prison on count one, sexual battery; nine years in prison on count two, rape; count three merged with count two and no sentence was imposed; twelve months in prison on count four, gross sexual imposition; three years each on counts five and six, sexual battery; and twelve months in prison on count seven, gross sexual imposition. All sentences were ordered to be served consecutive to each other for an aggregate sentence of twenty years.
 {¶ 14} It is from this decision that Appellant now appeals, assigning the following errors for review: *Page 6 
 ASSIGNMENTS OF ERROR {¶ 15} "I. THE TRIAL COURT ERRED WHEN IT REFUSED TO GRANT THE APPELLANT'S MOTION FOR A DIRECTED VERDICT AS TO COUNT FOUR OF NOT GUILTY [SIC] AT THE CLOSE OF THE STATE'S CASE IN CHIEF.
 {¶ 16} "II. THE CONVICTION OF THE DEFENDANT-APPELLANT OF COUNT FOUR, GROSS SEXUAL IMPOSITION, WAS BASED ON INSUFFICIENT EVIDENCE TO WARRANT THE SAME.
 {¶ 17} "III. THE CONVICTION OF THE DEFENDANT-APPELLANT OF COUNT FOUR, GROSS SEXUAL IMPOSITION, WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED BELOW.
 {¶ 18} "IV. THE TRIAL COURT ABUSED ITS DISCRETION IN SENTENCING THE DEFENDANT-APPELLANT TO MORE THAN THE MINIMUM SENTENCE AND SENTENCING HIM TO CONSECUTIVE SENTENCES HEREIN."
 I., II. and III. {¶ 19} As appellant argues in each of these assignments of error that his conviction for gross sexual imposition was against the weight and sufficiency of the evidence, we shall address these assignments together.
 {¶ 20} In his first assignment of error, Appellant alleges that the trial court erred in not granting his Crim. R. 29 motion for acquittal at the conclusion of the State's case. In determining whether a trial court erred in overruling an appellant's motion for judgment of acquittal, the reviewing court focuses on the sufficiency of the evidence. See,e.g., State v. Carter (1995), 72 Ohio St.3d 545, 553, 651 N.E.2d 965,974; State v. Jenks (1991), 61 Ohio St.3d 259 at 273, 574 N.E.2d 492
at 503. *Page 7 
 {¶ 21} In his second and third assignments of error Appellant maintains that his conviction is against the sufficiency of the evidence and against the manifest weight of the evidence, respectively.
 {¶ 22} Specifically, Appellant maintains that the State failed to produce adequate proof of the element of force or threat of force to support a conviction of gross sexual imposition. We disagree.
 {¶ 23} When reviewing a claim of sufficiency of the evidence, an appellate court's role is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v.Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492. Contrary to a manifest weight argument, a sufficiency analysis raises a question of law and does not allow the court to weigh the evidence. State v. Martin (1983),20 Ohio App.3d 172, 485 N.E.2d 717, 175. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v.Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541.
 {¶ 24} Conversely, on review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v.Thompkins, 78 Ohio St.3d 380, 387, 678 N.E.2d 541, *Page 8 1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, syllabus 1.
 {¶ 25} Appellant challenges his conviction on the charge of gross sexual imposition in violation of R.C. § 2907.05, which states:
 {¶ 26} "(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
 {¶ 27} "(1) The offender purposely compels the other person, or one of the other persons, to submit by force or threat of force."
 {¶ 28} "* * *
 {¶ 29} "(D) A victim need not prove physical resistance to the offender in prosecutions under this section."
 {¶ 30} "Sexual Contact" is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person". R.C. § 2907.01.
 {¶ 31} Accordingly, touching the "erogenous zone" is what is prohibited. The female breast and genital are both included within this definition. *Page 9 
 {¶ 32} "Force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. § 2901.01(A)(1).
 {¶ 33} As stated above, Appellant is only arguing that the State failed to prove force or threat of force.
 {¶ 34} The force element needed to prove the offense of gross sexual imposition is the same as it is for rape. State v. Riggs, Franklin App. Nos. 04AP-1279 and 04AP-1280, 2005-Ohio-5244, 120.
 {¶ 35} The Ohio Supreme Court has addressed the issue of "force or threat of force" several times. In analyzing "force or threat of force" in the context of the rape statute, R.C. § 2907.02, the Court inState v. Eskridge (1988), 38 Ohio St.3d 56, 526 N.E.2d 304, held that the amount of force necessary to commit the offense "depends upon the age, size and strength of the parties and their relation to each other." Id. at paragraph one of the syllabus. Specifically, in cases involving the "filial obligation of obedience to a parent," a lesser showing of force may be sufficient. Given the inherent coercion in parental authority when a parent abuses his or her child, the requisite force "`need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the * * * victim's will was overcome by fear or duress, the forcible element * * * can be established.' Id. at 58-59, 526 N.E.2d 304, quoting State v. Fowler
(1985), 27 Ohio App.3d 149, 154, 500 N.E.2d 390.
 {¶ 36} The Supreme Court clarified Eskridge in State v. Schaim,65 Ohio St.3d 51, 600 N.E.2d 661, 1992-Ohio-31, stating that inEskridge, it "recognized that coercion is inherent in the parent-child relationship and that under these special circumstances *Page 10 
`[f]orce need not be overt and physically brutal, but can be subtle and psychological.' Id. at 54-55, 600 N.E.2d 661, quoting Eskridge,38 Ohio St.3d at 58-59, 526 N.E.2d 304.
 {¶ 37} In State v. Dye, 82 Ohio St.3d 323, 695 N.E.2d 763,1998-Ohio-234, the Supreme Court further held that the lesser showing of force principles established in Eskridge also applied to situations where a parent-child relationship was absent, but the adult defendant stood in a position of authority over the child victim and that, therefore, force or threat of force could be met "without evidence of express threat of harm or evidence of significant physical restraint." Id. at 329, 695 N.E.2d 763 (finding adult defendant held position of authority over child victim given the defendant had known the child's mother for seven years, had developed a close relationship with the child, and the child's mother had instructed the child to obey the defendant while in his care).
 {¶ 38} In the context of teenage victims and adult defendants, the "force or threat of force" element was met where a fourteen-year old victim was told by her step-father, an important authority figure to her, to commit sexual acts with him and not to tell anyone, State v.Fowler, 27 Ohio App.3d 149, and where two fourteen-year old victims feared the accused to the extent they felt they could not leave after he placed his hand inside their clothes, grabbed one victim's arm when she tried to leave, and told his son and another girl who happened upon the scene to go away. State v. Drayer, 159 Ohio App.3d 189, 2004-Ohio-6120.
 {¶ 39} In the case at bar, we decline to use the definition of "force" applied in Schaim because the victim in that case was an adult. Here, the victim was not an adult when she was sexually assaulted. She was a minor and still considered a child. *Page 11 
 {¶ 40} The victim was not of so tender an age, however, as the children in Eskridge and Dye. Therefore, the question is whether her will was overcome by fear or duress.
 {¶ 41} "In determining whether a course of conduct results in duress, the question is not what effect such conduct would have upon an ordinary man but rather the effect upon the particular person toward whom such conduct is directed, and in determining such effect the age, sex, health, and mental condition of the person affected, the relationship of the parties and all the surrounding circumstances may be considered."Id., citing State v. Woods (1976), 48 Ohio St.2d 127, 135-136,357 N.E.2d 1059, overruled in part, on other grounds, by State v. Downs
(1977), 51 Ohio St.2d 47, 364 N.E.2d 1140, paragraph one of the syllabus.
 {¶ 42} In the instant case, Appellant is the victim's father so there is no dispute that he held a position of authority over her. Therefore, the force or threat of force could be met "without evidence of express threat of harm or evidence of significant physical restraint." The victim testified in the instant case that she had been repeatedly sexually abused by her father, that he was bigger than her and that she felt that she had to obey him because he was her father.
 {¶ 43} Although Appellant compares the instant case to State v.Byrd, Eighth Dist. App. No. 83415, 2003-Ohio-3958, State v. Euton, Third Dist. App. No. 2-06-35, 2007-Ohio-6704, and State v. Riggs, Tenth Dist. App. No. 04AP-1279, 04AP-1280, 2005-Ohio-5244, we conclude that these cases are distinguishable.
 {¶ 44} In Byrd the court held that the "force or threat of force" element was not met where a fifteen-year old victim awoke in her bed to find the adult defendant *Page 12 
touching her genitals over her clothing because he did not apply any force in relation to her body or clothing; because he did not hold a position of authority over her; because, as the victim became aware of the touching, she immediately got up and left the area; and, because the contact did not occur due to fear or duress.
 {¶ 45} In Euton, the court held that "subtle or psychological force" did not apply in that case because Euton did not have a parent-child relationship with the victim and did not hold a position of authority over him. Appellant had only met the victim two days before the incident occurred and the victim gave no indication in his testimony that he viewed Euton as an authority figure.
 {¶ 46} In Riggs, the appellant and the victim, who was his minor step-granddaughter, were alone together in the basement, and appellant reached out and touched the victim's breast over her shirt. This incident was an isolated event that occurred after a period of no sexual contact between appellant and victim. The victim told appellant "no" and immediately turned and went upstairs. The trial court found that the fact that the victim rebuffed appellant and immediately distanced herself from him indicated that she was not afraid or threatened by appellant at the time of the incident. The court found that there was simply no evidence that the victim was under the influence of any psychological force or coercion by appellant. The trial court found that the evidence was insufficient to show force or threat of force because the defendant did not command victim to do anything and did not threaten or restrain her. The court further found that the defendant did not engage in any contact other than sexual contact necessary for offense itself, and there was no evidence that victim's will was overcome by any contemporaneous subtle or psychological force or coercion. *Page 13 
 {¶ 47} In the case sub judice, Appellant is the victim's father. Appellant was angry at the victim for not calling him after her swim meet and for coming home late. At the time the touching occurred, Appellant was involved in a discussion with the victim about her not wanting to have any further sexual contact with Appellant. Appellant then told her that he was going to choose her clothing for her and told her that she was not to wear a bra or underwear, unless it was a thong. Appellant then reached out and touched S.P's breast. Appellant applied enough force that she felt the pinch. S.P. then back away from Appellant. We find that in this situation, that the evidence was sufficient to find that the victim, in addition to feeling the actual force of the pinch, felt psychological force and/or coercion due to the nature of the situation.
 {¶ 48} Under these circumstances we conclude the element of force was met.
 {¶ 49} Accordingly, we conclude that sufficient evidence supports the jury's finding that defendant used force when he committed the offense of gross sexual imposition against the victim and that the jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt.
 {¶ 50} Appellant's first, second and third assignments of error are overruled.
 IV. {¶ 51} In his fourth assignment of error, Appellant argues that the trial court erred in sentencing him to more than the minimum sentence and for ordering said sentences to run consecutively. We disagree.
 {¶ 52} In support of his argument, appellant cites the case ofState v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856. In Foster, the Supreme Court of Ohio conducted a comprehensive review of Ohio's criminal sentencing statutes and held the following at *Page 14 
paragraph three of the syllabus: "Because R.C. 2929.14(E)(4) and2929.41(A) require judicial findings of fact not proven to a jury beyond a reasonable doubt or admitted by the defendant before the imposition of consecutive sentences, they are unconstitutional." However, theFoster court held the following at paragraph four of the syllabus: "R.C. 2929.14(E)(4) and 2929.41(A) are capable of being severed. After the severance, judicial fact-finding is not required before imposition of consecutive prison terms."
 {¶ 53} Appellant was sentenced post-Foster. Therefore, the trial court was not required to make any specific finding before imposing more than the minimum term within the statutory range for a particular felony. See also, State v. Hathy, 11th Dist. No. 2007-A-0057, 2008-Ohio-2614.
 {¶ 54} "[W]e conclude that post-Foster, this Court reviews the imposition of consecutive sentences under an abuse of discretion standard. Furthermore, when applying the abuse of discretion standard, an appellate court may not generally substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619,621."
 {¶ 55} In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983)5 Ohio St.3d 217.
 {¶ 56} As stated in Foster at paragraph seven of the syllabus: "Trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." *Page 15 
 {¶ 57} In the instant case, Appellant was found guilty of numerous counts of rape, sexual battery, and gross sexual imposition. The trial court sentenced Appellant within the statutory range on each count. See, R.C. § 2929.14(A)(1)-(5).
 {¶ 58} In its sentencing entry filed July 31, 2008, the trial court noted it "considered the record, oral statements, and the Presentence Investigation prepared, as well as the principles and purposes of sentencing under Ohio Revise Code Section 2929.11, and has balanced the seriousness and recidivism factors under Ohio Revised Code Section 2929.12."
 {¶ 59} In the case at bar, there is no evidence in the record that the judge acted unreasonably in selecting the sentence arbitrarily, basing the sentence on impermissible factors, failing to consider pertinent factors, or giving an unreasonable amount of weight to any pertinent factor.
 {¶ 60} After reviewing the record, we find that the trial court did not abuse its discretion when it sentenced Appellant to more than the minimum and for ordering the sentences to run consecutively. *Page 16 
 {¶ 61} Appellant's fourth assignment of error is overruled.
 {¶ 62} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas of Licking County, Ohio, is affirmed.
Wise, J., Delaney, J., concurs.
Hoffman, P. J., concurs in part and dissents in part. *Page 18 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Licking County, Ohio, is affirmed.
Costs assessed to Appellant. *Page 17