OPINION
{¶ 1} Brian Melton was found guilty by a jury of aggravated robbery, aggravated burglary, and firearm specifications that accompanied each principal charge. The trial court imposed concurrent four-year sentences on the principal charges. It merged the firearm specifications and imposed a three-year sentence to be served consecutively and prior to the *Page 2 
concurrent four-year sentences. On appeal, Melton advances two assignment of error.
 I. {¶ 2} "A) THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUPPORT THE FIREARM SPECIFICATION SINCE THERE WAS NO EVIDENCE PRESENTED THAT THE FIREARM ALLEGEDLY USED IN THE CRIME WAS REAL OR OPERABLE, AND B) THE CONVICTION OF THE FIREARM SPECIFICATION IS AGAINST THE WEIGHT OF THE EVIDENCE."
 {¶ 3} This assignment is confined to whether the State's evidence of operability of the alleged firearm is supported by sufficient evidence or, alternatively, the weight of the evidence.
 {¶ 4} Melton forced his way into Kinisha McCoy's home and ransacked it, taking items of her and her fiance's personal property. At the time, McCoy was alone in the house with her toddler son. After forcing his way into the house, the following occurred according to McCoy's testimony.
 {¶ 5} "A. When he came in, he told me to shush, and he asked me if there was anybody else in the house.
 {¶ 6} "Q. And what did you say?
 {¶ 7} "A. I said no.
 {¶ 8} "Q. Okay. Did the defendant say or doing [sic] anything after he said that?
 {¶ 9} "A. After he said and done that, he then walked to my room and he — well, he pulled the gun out (indicating). He had a gun. He pulled the gun out, and then he walked in my room.
 {¶ 10} "Q. Okay. Where did he pull the gun out from.
 {¶ 11} "A. From his (indicating) waist. *Page 3 
 {¶ 12} "Q. Okay. And what did the gun look like?
 {¶ 13} "A. It was black, maybe something like this (indicating). It was a black gun.
 {¶ 14} "Q. And which hand did the defendant put the gun in?
 {¶ 15} "A. The right (indicating).
 {¶ 16} "Q. Okay. Were you scared?
 {¶ 17} "A. Yes."
 {¶ 18} McCoy testified that she thought the gun was real and that she feared for her safety. Melton did not have permission to take the property.
 {¶ 19} R.C. 2923.11 provides in part:
 {¶ 20} "(B)(1) `Firearm' means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. `Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable.
 {¶ 21} "(2) When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm."
 {¶ 22} Construing this statute, the supreme court stated in State v.Thompkins (1997), 78 Ohio St.3d 380, syllabus para. 1:
 {¶ 23} "A firearm enhancement specification can be proven beyond a reasonable doubt by circumstantial evidence. In determining whether an individual was in possession of a firearm and whether the firearm was operable or capable of being readily rendered operable at the time *Page 4 
of the offense, the trier of fact may consider all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm."
 {¶ 24} In Thompkins, the defendant pointed a gun directly at the robbery victim and told her it was a holdup and to be quick, in response to which she handed over money from the cash register. In reversing the court of appeals, the supreme court agreed with the dissenting appellate judge "that the evidence . . . `was clearly sufficient for the jury to find Thompkins guilty of the firearm specification.'"
 {¶ 25} We found Thompkins instructive in State v. Knight, Greene App. No. 2003 CA 14, 2004-Ohio-1941, where the issue was whether the State presented sufficient evidence that Knight possessed a deadly weapon — a gun — when he robbed the CD connection, a retail store. The evidence and our rationale for finding the evidence sufficient were as follows:
 {¶ 26} "Wilson (an employee of CD) testified that she believed that Knight possessed a gun and that she gave him access to the cash register on the belief that he was armed with a gun:
 {¶ 27} "[*P21] WILSON: `All he did was come up to the counter and he had his hand in his pocket'
 {¶ 28} "[*P22] PROSECUTOR: `All right.'
 {¶ 29} "[*P23] WILSON: `And it just seemed like he had a gun in his pocket.'
 {¶ 30} "[*P24] PROSECUTOR: [**14] `Okay. Can you stand up and demonstrate or just show the Jury what you saw?'
 {¶ 31} "[*P25] WILSON: `Yeah, he just came up to the counter and he had both hands in his pocket, and the right hand just — was just — was out and looked like he had a small gun in his pocket' * * * *Page 5 
 {¶ 32} "[*P26] PROSECUTOR: `You said you saw this, what you believe to be a gun in his pocket. What did you base that conclusion upon?'
 {¶ 33} "[*P27] WILSON: `Just the shape that it was taking like in his pocket.'
 {¶ 34} "[*P28] Wilson subsequently testified that Knight did not display a gun when he took both hands out of pockets to grab the money from the cash register, thus causing her to question whether he, in fact, had a gun. However, she further testified that she had opened the cash register drawer for him, because she had believed that he possessed a gun.
 {¶ 35} "[*P29] Construing the evidence in the light most favorable to the prosecution, we conclude that the state's evidence was legally sufficient. Wilson testified that Knight's right hand was `out' compared to his other hand, thus suggesting a concealed gun. Notably, Wilson demonstrated to the jury how Knight held his hands. Having only a transcribed record of [**15] the trial court proceedings and considering that we must construe the evidence in favor of the prosecution, we presume that Wilson's demonstration was sufficient to support a reasonable inference that Knight possessed a deadly weapon. Moreover, Wilson testified that she had opened the register, because she believed that Knight held a gun. Thus, Knight obtained the money from Wilson based on her belief that he was armed with a gun — a belief that was based on Knight's actions. Accordingly, we conclude that Wilson's testimony, when construed in the state's favor, is legally sufficient to support the jury verdict."
 {¶ 36} The evidence in this case is at least as strong, if not stronger, than the evidence in Knight. ["Firearm" is merely a subset of "deadly weapon," deadly weapon being defined in part as "any instrument, device, or thing capable of inflicting death." R.C. 2923.11(A).] Here, Melton actually displayed in his hand what McCoy believed to be a real gun as he commenced *Page 6 
to ransack her house, putting McCoy in fear. McCoy did not attempt to prevent Melton from ransacking her house and taking her and her fiance's property.
 {¶ 37} The evidence of operability was sufficient. Because only McCoy testified on this issue, the verdict was not against the manifest weight of the evidence.
 {¶ 38} Although not dispositive, it is noteworthy that Melton's trial counsel, an experienced criminal defense attorney, did not question the operability of the gun in either of his Crim. R. 29 motions for acquittal or in closing argument.
 {¶ 39} Because the evidence supported a reasonable inference that the gun Melton brandished was operable — as defined at R.C. 2923.11(B)(1) — we overrule the first assignment.
 II {¶ 40} "THE TRIAL COURT ERRED IN AWARDING RESTITUTION WITHOUT A HEARING AND WITHOUT DOCUMENTARY EVIDENCE."
 {¶ 41} The State concedes error and we sustain the second assignment.
 III {¶ 42} The order of restitution will be reversed, and the matter will be remanded for further proceedings on the question of restitution. In all other respects, the judgment will be affirmed.
DONOVAN, PJ. and GRADY, J., concur.
 Kelly D. Crammer, Daniel E. Brinkman, Hon. Timothy N. O'Connell. *Page 1