[Cite as *State v. Shaw*, 2011-Ohio-4723.]

IN THE COURT OF APPEALS OF MONTGOMERY COUNTY, OHIO

STATE OF OHIO                    :

    Plaintiff-Appellee           :    C.A. CASE NO. 24263

vs.                              :    T.C. CASE NO. 10CR1161

LAMARK R. SHAW                   :    (Criminal Appeal from
                               Common Pleas Court)
    Defendant-Appellant          :

. . . . . . . . .

O P I N I O N

Rendered on the 16th day of September, 2011.

. . . . . . . . .

Mathias H. Heck, Jr., Pros. Attorney; Kirsten A. Brandt, Asst. Pros. Attorney, Atty. Reg. No. 0070162, P.O. Box 972, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

Darrell L. Heckman, Atty. Reg. No. 0002389, One Monument Square, Suite 200, Urbana, Ohio 43078
    Attorney for Defendant-Appellant

. . . . . . . . .

VUKOVICH, J. (BY ASSIGNMENT):

{¶ 1} Defendant-appellant Lemark Shaw appeals from his conviction in Montgomery County Common Pleas Court for first-degree felony kidnapping and the attached firearm specification. Shaw asserts three arguments for reversal. First, he contends that

the evidence was insufficient to establish the elements of the firearm specification, specifically that the firearm was operable. Second, appellant argues that the trial court erred when it failed to instruct the jury on second-degree felony kidnapping. The last argument appellant asserts is that the trial court erred when it allowed a typed copy of appellant's written statement to be admitted into evidence.

{¶ 2} For the reasons expressed below, we find no merit with appellant's arguments. Accordingly, the judgment of the trial court is hereby affirmed.

## STATEMENT OF THE FACTS AND CASE

{¶ 3} On May 11, 2010 appellant was indicted by the Montgomery County Grand Jury for kidnapping, a violation of 2905.01(A)(1), a first-degree felony and a firearm specification, a violation of R.C. 2941.145.

{¶ 4} The case proceeded to a jury trial. At trial, the evidence established that on April 1, 2010, a friend of appellant's was carjacked by a Devin Garrett, aka Nuke. Later that day, Olivia Anderson, Nuke's girlfriend, was kidnapped at gunpoint outside of her residence. Her hands and feet were tied, she was gagged, a sheet placed over her head and she was put in the trunk of the kidnappers' car. While in the trunk, the kidnappers talked to her through the open console in the backseat and pointed the gun

at her. They asked her where her boyfriend was and wanted his cellular phone number.

{¶ 5} The victim indicated that the kidnappers took her to a place that she believed was a house. They continued to ask about Garrett and even started asking about her parents. They wanted $50,000 to release her. She told them that she was pregnant with Garrett's baby and that her parents had disowned her. While it was true that she was pregnant, her parents had not disowned her. Still she refused to give them information on Garrett or her parent's, because she did not want Garrett or her parents to be put in danger. Eventually the kidnappers became irate with Anderson and they punched her in the stomach, the gun was put in her mouth and cocked and she was told they were going to kill her.

{¶ 6} After a couple hours she was placed back into the car. She was then taken to a secluded area called The Learning Tree, where the kidnappers removed her from the car with the sheet still on her head. They told her not to remove the sheet or they would kill her, then they drove away.

{¶ 7} After they left, she removed the sheet and began looking for help. She was able to get one of the people living in the area to call the police. A deputy was sent to the area around The Learning Tree, found Anderson and observed that she was bleeding. She was then taken to a hospital where she refused

medical treatment. Days after the kidnapping, she was shown a photographic lineup and she identified appellant as the kidnapper with the gun.

{¶ 8} During trial, it was established that appellant met with Detective Lawson, from the City of Dayton Police Department and provided a confession that he was one of Anderson's abductors. However at trial, he asserted that he lied to Detective Lawson and that when he gave his statement to her, he was under the influence of drugs and alcohol. He also offered witnesses to confirm his alleged alibi.

{¶ 9} At the conclusion of the evidence, the jury found him guilty of the charge and the specification. The trial court sentenced him to six years for the kidnapping conviction and three years for the firearm specification. The sentences were ordered to be served consecutively.

### FIRST ASSIGNMENT OF ERROR

{¶ 10} "THE EVIDENCE OF OPERABILITY OF A FIREARM WAS INSUFFICIENT TO SUSTAIN A CONVICTION AS A MATTER OF LAW."

{¶ 11} The relevant inquiry for appellate review of a sufficiency of the evidence argument is whether any rational fact finder, viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Dennis* (1997), 79 Ohio St.3d 421,

430, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 319. A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." Id. at 430.

{¶ 12} R.C. 2941.145 permits imposition of a mandatory three year prison term where the indictment specifies, and the jury finds:

{¶ 13} "* * * that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offenses."

{¶ 14} R.C. 2923.11(B) defines "firearm" and provides:

{¶ 15} "(1) 'Firearm' means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. 'Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable.

{¶ 16} "(2) When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control

over the firearm."

{¶ 17} The Ohio Supreme Court has held that:

{¶ 18} "The state must present evidence beyond a reasonable doubt that a firearm was operable at the time of the offense before a defendant can receive an enhanced penalty pursuant to R.C. 2929.71(A) [prior firearm specification statute]. However, such proof can be established beyond a reasonable doubt by the testimony of lay witnesses who were in a position to observe the instrument and the circumstances surrounding the crime." *State v. Murphy* (1990), 49 Ohio St.3d 206, syllabus.

{¶ 19} Consequently, the state is not required to admit into evidence the firearm used during the commission of the crime in order to establish the firearm specification; both the firearm's existence and its operability may be inferred from the surrounding facts and circumstances. *State v. Vann*, Montgomery App. No. 22818, 2009-Ohio-5308, ¶27, citing *Murphy*, supra. In *Murphy*, the Ohio Supreme Court concluded that there was sufficient evidence to establish proof beyond a reasonable doubt that the defendant possessed a firearm and that firearm was operable when the evidence at trial established that the defendant entered a store with a gun described as a one or two shot derringer, the defendant announced he was robbing the store, he pointed a gun at the store clerk and stated he would kill the clerk if the clerk did not give

him money. *Murphy*, supra.

{¶ 20} Considering facts similar to *Murphy*, this court has consistently found that there is sufficient evidence for the jury to infer the operability of the firearm even when the firearm is not admitted into evidence. *State v. Branigan*, Montgomery App. No. 23593, 2010-Ohio-5745; *State v. Leftwich*, Montgomery App. No. 223383, 2009-Ohio-5044; *State v. Melton,* Montgomery App. No. 22591, 2009-Ohio-535. We have stated that "a victim's belief that the weapon is a gun, together with the intent on the part of the accused to create and exploit that belief for his own criminal purposes, is sufficient to prove a firearm specification." *Vann*, supra, at ¶27, citing *State v. Greathouse,* Montgomery App. No. 21536, 2007-Ohio-2136. See, also, *State v. Reynolds,* 79 Ohio St.3d 158, 1997-Ohio-304; *State v. Thompkins,* 78 Ohio St.3d 380, 1997-Ohio-52.

{¶ 21} In the case at hand, Ronnie Gullatte, who witnessed the abduction, testified at trial that the abductor had a gun. Tr. 138. Gullatte described the gun as a big gun, a rifle or AK-47 type rifle. Tr. 140-141. In appellant's handwritten statement he stated that a gun was used by Little Johnny Boy during the kidnapping and that it was a camouflaged sawed off shotgun. Tr. 271, 376, 381. Anderson also testified that a gun was used in her abduction. Tr. 163. She stated that while she was in trunk of the car the gun was pointed at her through the open console.

Tr. 166-167. She indicated that at one point during the kidnapping the gun was put in her mouth, it was cocked several times, and the kidnappers told her they were going to kill her if they did not get what they asked for. Tr. 171-176. Considering these facts and all of the above cited case law from this district and the Ohio Supreme Court, there was sufficient evidence from which the jury could infer that the firearm was operable. Accordingly, this assignment of error lacks merit.

## SECOND ASSIGNMENT OF ERROR

{¶ 22} "THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY ON THE OFFENSE OF INFERIOR DEGREE OF SECOND DEGREE FELONY KIDNAPPING."

{¶ 23} R.C. 2905.01(A)(1) states that no person by force or threat "shall remove another from the place where the other person is found or restrain the liberty of the person" for purposes of holding that person for ransom. A violation of R.C. 2905.01(A)(1) is a first-degree felony, except when the victim is released in a safe place unharmed. R.C. 2905.01(C)(1). In that instance, the violation of (A)(1) would be a second-degree felony. R.C. 2905.01(C)(1).

{¶ 24} Although the safe place unharmed provision mitigates an offender's criminal culpability, it is not an element of kidnapping, but rather must be treated the same as an affirmative

defense. *State v. McKnight,* 107 Ohio St.3d 101, 2005-Ohio-6046, ¶233. See, also, *State v. Carroll*, Cuyahoga App. No. 93938, 2010-Ohio-6013, ¶13; *State v. Bankston*, Franklin App. No. 08AP-668, 2009-Ohio-754, ¶16. Thus, it is the defendant's burden to prove.

{¶ 25} After the state closed its case, appellant made a statement that he might want a jury instruction on second-degree felony kidnapping. Tr. 295. The trial court indicated that such an instruction would be allowed if the evidence warranted it, but the court stated that it would wait until the end of the presentation of evidence before deciding whether such instruction was warranted. Tr. 296. After the defense rested its case-in-chief, the state indicated that it did not believe, considering the evidence produced at trial, that an instruction on second-degree felony kidnapping was warranted. Tr. 388-398.

{¶ 26} In response to that argument defense counsel made the following statement:

{¶ 27} "Just in response. I think that is correct. The defense did not put forth any evidence tending to show that as a – and the reason is the defense didn't have any witnesses that could testify as to what exactly happened to Ms. Anderson prior to the kidnapping, during the kidnapping and after the kidnapping, Your Honor. Thank you." Tr. 389.

{¶ 28} The trial court, however, did not rule on whether a

second-degree felony kidnapping instruction was warranted until after the state's rebuttal witness.  At that point it stated:

{¶ 29} "Very well.  The Court, during the break, had taken another look at the affirmative defense and would note for the record that the Court considered the fact that the evidence can be considered from the State's case without any evidence regarding that by the – produced by the Defendant.

{¶ 30} "However, because the evidence is uncontroverted that the victim was struck and – without going into what the injuries might have been, either minor or otherwise, because the evidence is uncontroverted that the victim was struck and, accordingly, not released unharmed, the Court finds that there could be no preponderance of the evidence argument made by the Defendant in that regard.  And we are not including it in the charge."  Tr. 395.

{¶ 31} Appellant never objected to this determination.

{¶ 32} As there was no objection, appellant waives all but plain error. Plain error exists only where it is clear that, but for the error, the result of the trial would have been different. *State v. Skatzes,* 104 Ohio St.3d 195, 2004-Ohio-6391, ¶52.

{¶ 33} The Eighth Appellate District has found plain error in the situation where an appellant did not request a jury instruction on second-degree felony kidnapping but the evidence warranted such

instruction. *Carroll*, supra. In coming to that conclusion, our sister district indicated that while Carroll did not introduce evidence that the victim was released in a safe place unharmed, the state's evidence could be used to establish such an affirmative defense. Id. at ¶15. In *Carroll*, the witnesses that testified at trial stated that Carroll threatened to hurt them, however, none of the witnesses avowed that he actually inflicted any harm upon them. Id. They indicated that once the events were over, Carroll fled. Id. Carroll also testified that he had no intention of hurting the victims. Id.

{¶ 34} Appellant insists that the case at hand is similar to *Carroll*. We disagree. Anderson testified that she was pregnant, she was punched in the stomach by her kidnappers and she miscarried. Tr. 173, 179. It is true that she did not accept medical treatment and there is no clear medical evidence produced at trial to confirm that the punch caused the miscarriage. Tr. 179. Regardless of the outcome of the punch, it cannot logically be concluded that a person is left unharmed when that person is punched. Likewise, it is also noted that she testified that she had red marks on her wrists and feet. Tr. 178. The deputy who found her also stated that he observed that she was bleeding from her right hand. Tr. 223. Thus, there is evidence of harm.

{¶ 35} Furthermore, we note, just as the trial court did, that

all of that evidence is uncontroverted. Appellant offered no evidence to show that Anderson was unharmed when she was released. Accordingly, considering the evidence, the trial court's conclusion that there could be no preponderance of the evidence argument made by appellant that the victim was released in a safe place unharmed does not amount to plain error. This assignment of error lacks merit.

## THIRD ASSIGNMENT OF ERROR

{¶ 36} "THE TRIAL COURT ERRED IN ADMITTING OVER OBJECTION TESTIMONY OF A CLAIMED TYPED COPY OF A WRITTEN CONFESSION."

{¶ 37} Appellant was interviewed by Detective Lawson and proceeded to give her a written statement. Detective Lawson testified about the written statement and read it into the record. However, instead of reading from the original written statement, she read from a transcribed copy. This was allegedly done because appellant's handwriting is hard to decipher. Appellant objected. Tr. 275-276. The trial court overruled the objection based on the interest of time that it would take to read the handwritten statement. The trial court then stated that any issue with the transcript could be remedied by submitting both the written statement and that transcribed copy to the jury for them to determine whether the transcription was an accurate copy. Tr. 276.

{¶ 38} When the state moved to admit its exhibits it did not mark or move for the admission of the transcribed copy of the statement. Tr. 297. Following appellant's case-in-chief, the state noted that the transcribed copy was not admitted into evidence. Tr. 387. The trial court gave appellant the option of whether he wanted it admitted into evidence. Tr. 387-388. Appellant objected to the admission, which was sustained by the trial court. Tr. 388.

{¶ 39} Despite the wording of the assignment of error, appellant does not clearly argue that Detective Lawson was not permitted to read from the transcribed copy during her testimony. Rather, his argument is that "the jury should have been given the actual confession only, without the claimed transcript." As is shown above, this argument fails because the factual premise it is based on is not accurate. The jury did not view the transcript; only the written confession was admitted into evidence.

{¶ 40} Regardless, it cannot be concluded that the detective reading a transcript of appellant's written statement amounted to reversible error. As the state indicates, this court has previously approved the procedure of submitting to the jury a transcript of an audio taped conversation to use as a listening aid during trial, so long as the transcript is not admitted. *State v. Rogan* (1994), 94 Ohio App.3d 140, 153-155, citing *State v. Waddy*

(1992), 63 Ohio St.3d 424, 445-446. The transcript was used in the case at hand as an aid in deciphering a difficult to read handwritten statement and, as such, is similar to the use of the transcript in *Rogan*. Consequently, the *Rogan* holding is applicable in this case.

{¶ 41} Furthermore, the detective's rendition of the written statement was substantially accurate. Appellant read his hand written statement into the record during his testimony. Tr. 371-373. A comparison of his testimony to that of the detective's indicates that the detective's version is an accurate reflection of the typed statement. Tr. 277-278, 371-373. While there are slight variations, such as slight alterations for readability, those variations are at the most minor and do not change the substance of the confession. Consequently, based on *Rogan* and the accuracy of the transcript, use of the transcript did not amount to reversible error. This assignment of error lacks merit.

### CONCLUSION

{¶ 42} All three assignments of error lack merit. Therefore, the judgment of the trial court is hereby affirmed.

FAIN, J. And DONOVAN, J., concur.

(Hon. Joseph J. Vukovich, Seventh District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.)

Copies mailed to:

Kirsten A. Brandt, Esq.
Darrell L. Heckman, Esq.
Hon. Gregory F. Singer