[Cite as *State v. Burke*, 2020-Ohio-4781.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HENRY COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,               CASE NO. 7-19-09

    v.

RANDY BURKE,                       O P I N I O N

    DEFENDANT-APPELLANT.

STATE OF OHIO,

    PLAINTIFF-APPELLEE,               CASE NO. 7-19-10

    v.

RANDY BURKE,                       O P I N I O N

    DEFENDANT-APPELLANT.

**Appeals from Henry County Common Pleas Court**
**Trial Court Nos. 18CR0152 and 19CR0096**

**Judgments Affirmed**

**Date of Decision: October 5, 2020**

APPEARANCES:

    *Donald Gallick* **for Appellant**

    *Gwen Howe-Gebers* **for Appellee**

**PRESTON, J.**

{¶1} Defendant-appellant, Randy Burke ("Burke"), appeals the September 5, 2019 judgments of sentence of the Henry County Court of Common Pleas.  For the reasons that follow, we affirm.

{¶2} This case arises from the allegations by multiple females that Burke, their former high school cross country and track coach, inappropriately touched them.  (Case No. 18CR0152, Doc. No. 76).  On November 28, 2018, the Henry County Grand Jury indicted Burke on ten counts, involving four alleged victims, in Case Number 18CR0152: Counts One, Two, Four, Five, Eight, and Ten of gross sexual imposition in violation of R.C. 2907.05(A)(1), fourth-degree felonies, and Counts Three, Six, Seven, and Nine of sexual imposition in violation of R.C. 2907.06(A)(1), third-degree misdemeanors.  (Case No. 18CR0152, Doc. No. 1).[1] On December 11, 2018, Burke appeared for arraignment and entered pleas of not guilty to the counts in the indictment.  (Case No. 18CR0152, Doc. No. 20).

{¶3} On June 26, 2019, the Henry County Grand Jury indicted Burke on two counts, involving one alleged victim, in Case Number 19CR0096:  Count One of gross sexual imposition in violation of R.C. 2907.05(A)(1), a fourth-degree felony,

---

[1] Upon the motion of the State, the trial court made several minor amendments to the indictment, concerning only the date that the alleged contact occurred.  (Case No.18CR0152, Doc. Nos. 6, 7, 59, 61, 70, 71). However, the amendments do not affect Count One, which is the sole count of the indictment being argued on appeal.  (Case No. 18CR0152, Doc. Nos. 6, 7, 59, 61, 70, 71); (Appellant's Brief at 9-16).  Accordingly, the amendments will not be discussed further.

and Count Two of sexual imposition in violation of R.C. 2907.06(A)(1), a third-degree misdemeanor. (Case No. 19CR0096, Doc. No. 1). On July 15, 2019, Burke appeared for arraignment and entered pleas of not guilty to the counts in the indictment in Case Number 19CR0096. (Case No. 19CR0096, Doc. No. 10). On July 10, 2019, the State filed a motion for the trial court to consolidate case numbers 18CR0152 and 19CR0096 for the purpose of trial, which the trial court subsequently granted. (Case No. 18CR0152, Doc. No. 40); (Case No. 19CR0096, Doc. Nos. 9, 13).

{¶4} The cases proceeded to a jury trial on August 5-8, 2019. (Case No. 18CR0152, Doc. No. 89); (Case No. 19CR0096, Doc. No. 43). At the close of the State's case, Burke made a motion for acquittal under Crim.R.29, which the trial court denied. (Aug. 5-8, 2019 Tr. at 363-366). On August 8, 2019, the jury returned its verdict. (Case No. 18CR0152, Doc. No. 89); (Case No. 19CR0096, Doc. No. 43). With respect to Case Number 18CR0152, the jury found Burke guilty of Counts One and Three and not guilty of the remaining counts. (Case No. 18CR0152, Doc. Nos. 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 89). With respect to Case Number 19CR0096, the jury found Burke guilty of Count Two and not guilty of Count One. (Case No. 19CR0096, Doc. Nos. 40, 41, 43). On August 27, 2019, the trial court filed its judgment entries of conviction. (Case No. 18CR0152, Doc. No. 89); (Case No. 19CR0096, Doc. No. 43).

{¶5} On September 4, 2019, the trial court sentenced Burke to five years of community control and 180 days of local incarceration as to Count One of Case Number 18CR0152, 30 days of local incarceration as to Count Three of Case Number 18CR0152, and 30 days of local incarceration as to Count Two of Case Number 19CR0096. (Case No. 18CR0152, Doc. No. 111); (Case No. 19CR0096, Doc. No. 44). The trial court ordered that the terms of incarceration be served concurrently. (*Id.*); (*Id.*). On September 5, 2019, the trial court filed its judgment entries of sentence. (*Id.*); (*Id.*).

{¶6} On September 13, 2019, Burke filed his notices of appeal. (Case No. 18CR0152, Doc. No. 114); (Case No. 19CR0096, Doc. No. 46). On September 25, 2019, Case Numbers 18CR0152 and 19CR0096 were consolidated for purpose of briefing and argument. Burke raises two assignments of error for our review, which we address together.

### Assignment of Error No. I

**The trial court erred in denying the Criminal Rule 29 motion on Count One of 2018 CR 0152, gross sexual imposition, Ohio Revised Code § 2907.05(A)(1), as the element of compulsion was not supported by the sufficiency of the evidence and is also against the manifest weight of [the] evidence.**

### Assignment of Error No. II

**The trial court erred by overruling the Criminal Rule 29 motion as to Count Two in 2019 CR 0096 as the only testimony to meet the burden of production came from the prosecutor's questions which inserted facts not testified to on direct examination;**

> **additionally[,] the conviction is against the manifest weight of the evidence.**

{¶7} In his first assignment of error, Burke argues that the trial court erred by denying his Crim.R. 29 motion with respect to Count One in Case Number 18CR0152 because the State failed to present sufficient evidence with respect to the element of force. (Appellant's Brief at 9-15). Burke further argues that his gross sexual imposition conviction is against the manifest weight of the evidence. (*Id.* at 15). In his second assignment of error, Burke argues that the trial court erred by denying his Crim.R. 29 motion with respect to Count Two of Case Number 19CR0096 because the State failed to present sufficient evidence that he engaged in sexual contact with the alleged victim. (*Id.* at 16-20). Burke also contends that his sexual imposition conviction is against the manifest weight of the evidence. (*Id.* at 16).

{¶8} Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997). Accordingly, we address each legal concept individually.

{¶9} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by state constitutional*

*amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Consequently, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33, citing *State v. Williams*, 197 Ohio App.3d 505, 2011-Ohio-6267, ¶ 25 (1st Dist.).  *See also State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19 ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence."), citing *Thompkins* at 386.  Because the purpose of a Crim.R. 29 motion for acquittal "is to test the sufficiency of the evidence presented at trial," we "review[ ] a denial of a Crim.R. 29 motion for judgment of acquittal using the same standard that is used to review a sufficiency of the evidence claim." *State v. Willis*, 12th Dist. Butler No. CA2009-10-270, 2010-Ohio-4404, ¶ 9, citing *State v. Terry*, 12th Dist. Fayette No. CA2001-07-012, 2002-Ohio-4378, ¶ 9, citing *State v. Williams*, 74 Ohio St.3d 569, 576 (1996); *State v. Lightner*, 3d Dist. Hardin No. 6-08-11, 2009-Ohio-544, ¶ 11, citing *State v. Carter*, 72 Ohio St.3d 545, 553 (1995).

{¶10} On the other hand, in determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

{¶11} "Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof." *Jenks*, 61 Ohio St.3d at paragraph one of the syllabus. "A conviction can be sustained based on circumstantial evidence alone." *State v. Franklin*, 62 Ohio St.3d 118, 124 (1991). "[I]n some instances, certain facts can only be established by circumstantial evidence" and a conviction based thereon "is no less sound than

one based on direct evidence." *State v. Smith*, 12th Dist. Butler No. CA2008-03-064, 2009-Ohio-5517, ¶ 80. "If the state 'relies on circumstantial evidence to prove an [essential] element of the offense charged, there is no [requirement that the evidence must be] irreconcilable with any reasonable theory of innocence in order to support a conviction[,]' so long as the jury is properly instructed as to the burden of proof, i.e., beyond a reasonable doubt." *State v. Bates*, 6th Dist. Williams No. WM-12-002, 2013-Ohio-1270, ¶ 50, quoting *Jenks* at paragraph one of the syllabus.

{¶12} Burke was convicted of gross sexual imposition in violation of R.C. 2907.05(A)(1) and sexual imposition in violation of R.C. 2907.06(A)(1). The offense of gross sexual imposition is codified in R.C. 2907.05, which provides, in relevant part, that "[n]o person shall have sexual contact with another, not the spouse of the offender * * * when * * * [t]he offender purposely compels the other person * * * to submit by force or threat of force." R.C. 2907.05(A)(1) (Jan. 1, 2008) (current version at R.C. 2907.05(A)(1) (Mar. 22, 2020)). "Sexual contact" is defined in R.C. 2907.01(B) as meaning "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." "Whether touching is done for the purpose of sexual gratification is a 'question of fact to be inferred from the type, nature, and circumstances surrounding the contact.'" *State v. Todd*, 3d Dist. Hardin No. 6-16-11, 2017-Ohio-

4355, ¶ 12, quoting *In re K.C.*, 1st Dist. Hamilton No. C-140307, 2015-Ohio-1613, ¶ 32, *abrogated on other grounds*, *State v. Barker*, 149 Ohio St.3d 1, 2016-Ohio-2708.

{¶13} "'Force' means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). "Force or the threat of force 'can be inferred from the circumstances surrounding sexual [contact].'" *State v. Kaufman*, 187 Ohio App.3d 50, 2010-Ohio-1536, ¶ 53 (7th Dist.), quoting *State v. Schaim*, 65 Ohio St.3d 51 (1992), paragraph one of the syllabus. A victim is not required to prove physical resistance for the offender to be found guilty of gross sexual imposition. R.C. 2907.05(D).

{¶14} "'Any,' as used in R.C. 2901.01(A)(1), is an adjective." *State v. Heiney*, 6th Dist. Lucas No. L-16-1042, 2018-Ohio-3408, ¶ 98. "'"As an adjective, 'any' is defined as: '[o]ne or some, regardless of kind, quantity, or number; an indeterminate number or amount.'"'" *Id.*, quoting *State v. Euton*, 3d Dist. Auglaize No. 2-06-35, 2007-Ohio-6704, ¶ 60, quoting *The American Heritage Dictionary* 117 (2d College Ed.1985). "'[T]he insertion of the word "any" into the definition of "force," recognizes that different degrees and manners of force are used in various crimes with various victims.'" *Id.*, quoting *State v. Lillard*, 8th Dist. Cuyahoga No. 69242, 1996 WL 273781, *6 (May 23, 1996). "Ohio Supreme Court case law demonstrates that the type and amount of force necessary to purposely compel a

victim to submit 'by force or threat of force' depends upon the victim and offender's relationship." *State v. Wine*, 3d Dist. Auglaize No. 2-12-01, 2012-Ohio-2837, ¶ 41, quoting R.C. 2907.05(A)(1) and citing *State v. Pordash*, 9th Dist. Lorain No. 04CA008480, 2004-Ohio-6081, ¶ 12.

{¶15} The offense of sexual imposition is codified in R.C. 2907.06(A)(1), which provides, in relevant part: "No person shall have sexual contact with another, not the spouse of the offender * * * when * * * [t]he offender knows that the sexual contact is offensive to the other person * * * or is reckless in that regard."

{¶16} The offenses of which Burke was convicted involve, to some extent, three different degrees of culpable mental state—purpose, knowledge, and recklessness. "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). "A person has knowledge of circumstances when the person is aware that such circumstances probably exist." *Id.* "When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is

a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact." *Id.* "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C). "A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist." *Id.*

{¶17} First, we will address Burke's argument that his gross-sexual-imposition conviction is not supported by sufficient evidence. Specifically, Burke argues that the State did not offer sufficient evidence to support a finding that he used force during the alleged incident. Because Burke challenges only the sufficiency of the State's evidence showing that he employed "force," we focus solely on whether the State presented sufficient evidence to prove this element.

{¶18} At trial, R.Z. testified that she ran cross country during her freshman year at Napoleon High School and was coached by Burke during the 2018 season. (Aug. 5-8, 2019 Tr. at 100-102). R.Z. described the uniform shorts that the cross country team wore and noted that the shorts have "built in underwear." (*Id.* at 104). R.Z. stated that the cross country team's uniform shorts open on the side for comfort when running and that the built in underwear provides modesty while running. (*Id.*).

**{¶19}** R.Z. testified that during picture day for the cross country team, she was talking to several friends while waiting in line to have her individual photograph taken when the photographer noted that a male athlete's underwear was showing. (*Id.*). R.Z. testified that Burke then approached her and pulled on the built-in underwear of her uniform shorts, apparently to demonstrate to the photographer that the shorts had built-in underwear. (*Id.*). R.Z. demonstrated to the jury how and where Burke pulled on her shorts. (*Id.*). R.Z. testified that when Burke pulled on her shorts, it caused the shorts to lower so much that the band of her actual underwear was exposed. (*Id.* at 104-105). According to R.Z., her uniform shirt was tucked into her pants before the incident occurred. (*Id.* at 105). R.Z. stated that Burke's hand touched her thigh while he was pulling on her shorts. (*Id.*).

**{¶20}** C.L. and J.C., who ran cross country for Napoleon High School during the 2018 season, testified that they were talking to R.Z. on cross country picture day when Burke approached R.Z. and pulled on the built-in underwear in R.Z.'s uniform shorts. (*Id.* at 172, 174-175, 296-298). C.L. further testified that Burke pulled on the built-in underwear twice. (*Id.* at 297-298). The first time, he exposed the built-in underwear. (*Id.*). The second time, he exposed R.Z.'s "real" underwear. (*Id.* at 298).

**{¶21}** During his testimony, Burke denied pulling on the built-in underwear in R.Z.'s shorts or touching R.Z.'s thigh. (*Id.* at 732, 735). Burke alleged that

R.Z.'s, J.C.'s and C.L.'s testimonies regarding the incident with R.Z.'s shorts were lies. (*Id.* at 735).

{¶22} Construing the evidence in a light most favorable to the State, we conclude that a rational trier of fact could have found that the State proved the force element of gross sexual imposition beyond a reasonable doubt. R.Z. and C.L. testified that Burke pulled on the built-in underwear in R.Z.'s uniform shorts with enough force to expose R.Z.'s actual underwear. R.Z. demonstrated to the jury how and where Burke pulled on her shorts. However, having only a transcribed record of the trial court proceedings and considering that we must construe the evidence in favor of the State, we presume that R.Z.'s demonstration was sufficient to support a finding that Burke used force to compel her to submit to his touching of her thigh. *See State v. Knight*, 2d Dist. Greene No. 2003 CA 14, 2004-Ohio-1941, ¶ 29 ("Notably, Wilson demonstrated to the jury how Knight held his hands. Having only a transcribed record of the trial court proceedings and considering that we must construe the evidence in favor of the prosecution, we presume that Wilson's demonstration was sufficient to support a reasonable inference that Knight possessed a deadly weapon."). *See also State v. Melton*, 2d Dist. Montgomery No. 22591, 2009-Ohio-535, ¶ 35-36. Moreover, C.L. testified that she witnessed Burke pull the built-in underwear in R.Z.'s uniform shorts twice and that the second pull, which exposed R.Z.'s actual underwear, occurred after Burke demonstrated the

presence of the built-in underwear. This testimony, combined with R.Z.'s age and the relationship between the parties, supports the jury's finding that Burke used force to compel R.Z. to submit to the sexual contact. Accordingly, a rational jury, construing the evidence in the light most favorable to the State, could reasonably have found that the State proved the element of force beyond a reasonable doubt. Therefore, as this is the only element of the offense Burke challenges, there is sufficient evidence supporting Burke's gross-sexual-imposition conviction.

{¶23} Having determined that Burke's gross-sexual-imposition conviction was supported by sufficient evidence, we next address Burke's argument that the State did not present sufficient evidence to support his sexual-imposition conviction involving S.N. With respect to this sexual-imposition conviction, Burke argues that the State did not offer sufficient evidence to support a finding that the area of S.N.'s body that he touched during the alleged sexual contact was an erogenous zone. Because Burke only challenges the sufficiency of the State's evidence showing that he touched one of S.N.'s erogenous zones, our analysis will be limited to the State's evidence supporting that element.

{¶24} At trial, S.N. testified that she was a member of the cross country team at Napoleon High School and was coached by Burke for four years. (Aug. 5-8, 2019 Tr. at 207-209). S.N. stated that Burke gave her hugs that made her feel

uncomfortable. (*Id.* at 209-212). S.N. stated that Burke put his hand on her hip and "kind of moved it." (*Id.* at 209).

{¶25} S.N. identified State's Exhibits 5A, 5B, and 5C as a series of photographs depicting an interaction between her and Burke at a cross country meet during the 2016 season. (*Id.* at 209-212). (*See* State's Exs. 5A, 5B, 5C). S.N. testified that State's Exhibit 5A depicts Burke "tapping" or "patting" her on her hip. (Aug. 5-8, 2019 Tr. at 210-211). (*See* State's Ex. 5A). State's Exhibit 5C depicts Burke standing behind S.N. with his arms wrapped around her and his head placed in the crook of S.N.'s neck. (Aug. 5-8, 2019 Tr. at 211-212). (*See* State's Ex. 5C). S.N. testified that in State's Exhibit 5C, one of Burke's arms is positioned under her "chest" and the other arm is around her neck. (Aug. 5-8, 2019 Tr. at 212). (*See* State's Ex. 5C). State's Exhibit 5B depicts the same embrace as State's Exhibit 5C. (Aug. 5-8, 2019 Tr. at 211). (*See* State's Ex. 5-B). S.N. testified that the photographs are accurate depictions of the type of hugs that Burke gave during the 2016 cross country season. (Aug. 5-8, 2019 Tr. at 212). (*See* State's Exs. 5B, 5C).

{¶26} Burke admitted that his hand was by S.N.'s breasts in State's Exhibits 5B and 5C, but denied that his hand was on S.N.'s hip and buttocks area in State's Exhibit 5A. (Aug. 5-8, 2019 Tr. at 729-730, 738-739). (*See* State's Exs. 5A, 5B, 5C). Rather, Burke stated that the photograph depicts him bringing his hand "down away from [S.N.]." (Aug. 5-8, 2019 Tr. at 739). (*See* State's Ex. 5A).

{¶27} Although Burke argues that the State needed to present evidence that he touched S.N.'s thigh or buttocks to prove that he had sexual contact with S.N., this court has stated that "[s]ince R.C. 2907.01(B) contains the phrase, 'including without limitation,' it is reasonable to conclude 'that the legislature intended that body parts that are not traditionally viewed as erogenous zones, may, in some instances, be considered erogenous zones.'" *State v. Peddicord*, 3d Dist. Henry No. 7-12-24, 2013-Ohio-3398, ¶ 15, quoting *State v. Miesse*, 2d Dist. Clark No. 99-CA-74, 2000 WL 1162027 (Aug. 18, 2000). "Indeed, Ohio courts have typically found that the list of erogenous zones in R.C. 2907.01 is a non-exhaustive list." *Id.* at ¶ 16. Moreover, an Ohio court has found that a victim's hips constituted an erogenous zone. *See State v. Stair*, 12th Dist. Warren No. CA2001-03-017, 2002 WL 42900, *3-4 (Jan. 14, 2002) (finding the victim's hips constitute an erogenous zone). Accordingly, the State did not need to present evidence that Burke touched S.N.'s thigh or buttocks to satisfy the element of sexual contact.

{¶28} Moreover, in addition to S.N.'s testimony that Burke repeatedly touched her on an area of her body that she characterized as her hip, State's Exhibit 5A depicts Burke touching S.N. on the area of her body that she described as her "hip" during her testimony. Thus, the jury was able to view the photograph and determine whether the area of S.N.'s body that Burke was touching in the

photograph constituted an erogenous zone, irrespective of the language S.N. used to characterize the relevant area of her body.

{¶29} Furthermore, State's Exhibits 5B and 5C depict Burke standing behind S.N., with one of his hands positioned under her breasts—a fact that Burke himself admitted in his testimony. Accordingly, the trier of fact could have found that this also constituted sexual contact. *See State v. Coleman*, 3d Dist. Logan No. 8-17-50, 2018-Ohio-1681, ¶ 37 (finding that the Appellant engaged in sexual contact with the female victim when he touched her breasts over her clothes).

{¶30} Thus, for the foregoing reasons, viewing the evidence in a light most favorable to the State, a rational trier of fact could have found that the State proved that Burke had engaged in sexual contact with S.N. Therefore, as this is the only element of the offense Burke challenges, there is sufficient evidence supporting Burke's sexual-imposition conviction.

{¶31} Having found that sufficient evidence supports Burke's gross-sexual-imposition and sexual-imposition convictions, we now turn to Burke's assertion that his gross-sexual-imposition and sexual-imposition convictions are against the manifest weight of the evidence. Although Burke summarily argues that the convictions are against the manifest weight of the evidence, he fails to advance any specific arguments that the evidence produced at trial weighs heavily against the

convictions. Rather, Burke's brief focuses on the sufficiency of the State's evidence with respect to several elements of the offenses, which we addressed above.

**{¶32}** "'[A] defendant has the burden of affirmatively demonstrating the error of the trial court on appeal.'" *State v. Costell*, 3d Dist. Union No. 14-15-11, 2016-Ohio-3386, ¶ 86, quoting *State. v Stelzer*, 9th Dist. Summit No. 23174, 2006-Ohio-6912, ¶ 7. If an argument exists that can support an assignment of error, it is not this court's duty to root it out. *State v. Shanklin*, 3d Dist. Union No. 14-13-23, 2014-Ohio-5624, ¶ 31, citing *State v. Raber*, 189 Ohio App.3d 396, 2010-Ohio-4066, ¶ 30 (9th Dist.). Accordingly, we need not address Burke's claim that his convictions are against the manifest weight of the evidence.

**{¶33}** Even so, after weighing the evidence and evaluating the credibility of the witnesses, with appropriate deference to the trier of fact's credibility determinations, we cannot conclude that the jury clearly lost its way and created such a manifest miscarriage of justice that Burke's gross sexual imposition and sexual imposition convictions must be reversed.

**{¶34}** Accordingly, Burke's first and second assignments of error are overruled.

{¶35} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgments of the trial court.

***Judgments Affirmed***

**SHAW, P.J. and ZIMMERMAN, J., concur.**

**/jlr**